STATE of Wisconsin EX REL. Michael J. GENDRICH, Petitioner-Appellant,

v.

Jon LITSCHER, Secretary, Department of Corrections, Jerry Smith, Chairman, Wisconsin Parole Commission, and Judy Smith, Warden, Oshkosh Correctional Institution, Respondents-Respondents.

Court of Appeals

*No. 00–3527. Submitted on briefs May 23, 2001.—Decided June 13, 2001.*

## 2001 WI App 163

(Also reported in 632 N.W.2d 878.)

817

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Michael J. Gendrich*, pro se.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Karla Z. Keckhaver*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. In this certiorari action, Michael J. Gendrich seeks judicial review of the decision of the Wisconsin Parole Commission denying him release on his mandatory parole date because he is a risk to the community and refuses to complete recommended sex offender treatment programs. While we agree with the general proposition that an inmate has a liberty interest, protected by due process, to be released on his or her mandatory release date, we disagree with Gendrich that this proposition gives him any relief. Gendrich is serving time for a serious felony and is subject to the presumptive mandatory release date law that grants the Commission discretion in deciding whether to release a serious felon on his or her mandatory release date. Because a discretionary act cannot create a legitimate expectation of release on the presumptive mandatory release date, we affirm the circuit court's dismissal of Gendrich's writ of certiorari.

¶ 2. Gendrich was originally sentenced to seven years in prison after he was convicted of first-degree

sexual assault of a child. Under the criteria of WIS. STAT. § 302.11(1g) (1999–2000),[1] his presumptive mandatory release date was computed to be June 25, 2000. Gendrich appeared before the Commission on March 14, 2000, for parole review, and the Commission decided to hold him beyond his mandatory release date of June 25, 2000, because of "risk to the community and/or refusal to complete recommended treatment." On May 9, 2000, Gendrich filed a petition for a writ of certiorari claiming a liberty interest in being released on his mandatory release date and challenging the Commission's action on several grounds. He alleged that the Commission misused its discretion by relying on improper information in his file and failing to state sufficient reasons for its decisions. He also alleged that the Commission violated the Eighth Amendment, equal protection and double jeopardy by basing its decision on his failure to participate in recommended treatment. After the Commission made a return to the writ, the circuit court issued a terse written decision denying Gendrich any relief.[2]

¶ 3. On appeal, Gendrich abandons his Eighth Amendment and double jeopardy arguments and

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] The State suggests that certiorari review of the Commission's action on March 14, 2000, denying Gendrich parole has been rendered moot because Gendrich was given another parole review on May 4, 2000. The State argues that the second parole review was the only relief this court could grant and there is no other relief from the March 14, 2000 hearing that is due Gendrich. Given that Gendrich's challenge to the action of the Commission is the same for both hearings and the circuit court addressed both hearings and denied Gendrich relief, we will consider the Commission's actions at both hearings.

focuses his energy on a claim that he was denied due process and equal protection.[3] He argues that he was denied due process because he was not permitted to make corrections in his prison record, and he was denied legal representation. He also argues that the Commission denied him parole based upon inaccurate information that he refused to participate in recommended treatment programs.

¶ 4. The scope of our review of a decision of the Commission is identical to that of the circuit court. Our review is limited to determining: (1) whether the Commission kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. *State ex rel. Saenz v. Husz*, 198 Wis. 2d 72, 76–77, 542 N.W.2d 462 (Ct. App. 1995). The prisoner has the burden of proving by a preponderance of the evidence that the actions of the Commission were arbitrary and capricious. *State ex rel. Peckham v. Krenke*, 229 Wis. 2d 778, 783, 601 N.W.2d 287 (Ct. App. 1999). If the prisoner fails to sustain the burden, the courts will not interfere with the Commission's decision. *State ex rel. Cutler v. Schmidt*, 73 Wis. 2d 620, 623, 244 N.W.2d 230 (1976).

¶ 5. Gendrich asserts that he has a legitimate liberty interest in being released on his mandatory

---

[3] Gendrich does not develop his equal protection claim and we decline to address it. "Simply to label a claimed error as *constitutional does not make it so . . . and we need not decide the* validity of constitutional claims broadly stated but never specifically argued." *State v. Scherreiks*, 153 Wis. 2d 510, 520, 451 N.W.2d 759 (Ct. App. 1989) (citation omitted).

parole eligibility date and that that interest is entitled to due process protections. The State concedes that there is a protectible liberty interest in mandatory parole, but that there is no such interest in discretionary or presumptive parole.

¶ 6. "[W]hile the Due Process Clause standing alone, creates no cognizable liberty interest in being granted parole, a state may create such an interest by state law." *Felce v. Fiedler*, 974 F.2d 1484, 1490 (7th Cir. 1992). The general state of the law on when there is a protectible liberty interest in a parole release decision was summarized in *Solomon v. Elsea*, 676 F.2d 282, 284 (7th Cir. 1982):

> It is axiomatic that before due process protections can apply, there must first exist a protectible liberty or property interest. While an inmate does not have a protectible expectation of parole by virtue of the mere existence of a parole system, the Supreme Court in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S. Ct. 2100, 60 L.Ed.2d 668 (1979), concluded that a specific statute governing parole release determinations may give rise to a liberty interest entitled to constitutional protection if it is phrased in such a way as to provide the inmates with a legitimate expectation of release on parole. In *Greenholtz*, the Court emphasized that their decision rested on the "unique structure and language" of the applicable Nebraska statute and cautioned that whether any other statute created a liberty interest would have to be decided on a case-by-case basis. (Citations omitted.)

¶ 7. In general, Wisconsin's parole system provides for a discretionary parole scheme[4] and a mandatory parole scheme.[5] Under the *Greenholtz* analysis, Wisconsin's discretionary parole scheme does not create a protectible liberty interest in parole. *Shea v. Smith*, 248 F.3d 1159 (TABLE), No. 00–1229, 2000 WL 1875733 (7th Cir. 2000).[6] On the other hand, Wisconsin's mandatory parole scheme does create a protectible liberty interest. *Felce*, 974 F.2d at 1492.

¶ 8. These general propositions do not assist Gendrich because he is assigned to a third parole scheme: presumptive mandatory parole. The presumptive mandatory release scheme provides that for a prisoner sentenced for a serious felony between April 21, 1994, and December 31, 1999, the mandatory

---

[4] WISCONSIN STAT. § 304.06(1)(b) provides, in part:

[T]he parole commission *may parole* an inmate of the Wisconsin state prisons . . . when he or she has served 25% of the sentence imposed for the offense, or 6 months, whichever is greater. (Emphasis added.)

[5] WISCONSIN STAT. § 302.11(1) provides, in part:

The warden . . . shall keep a record of the conduct of each inmate, specifying each infraction of the rules. . . . [E]ach inmate is entitled to *mandatory release on parole* by the department [of corrections]. The mandatory release date is established at two-thirds of the sentence. (Emphasis added.)

[6] We acknowledge that the cited order from the Seventh Circuit is an "unpublished opinion." However, the Seventh Circuit's rule only prohibits citation of an "unpublished opinion" as precedent in any federal court in that circuit. 7TH CIR. R. 53(b)(2) (iv). We are citing to the opinion not for its precedential value but for its persuasive interpretation of Wisconsin law. *Leverence v. U.S. Fid. & Guar.*, 158 Wis. 2d 64, 91, 462 N.W.2d 218 (Ct. App. 1990).

release date is presumptive.[7] Gendrich fits into this category because he was sentenced on February 12, 1996, after being found guilty of violating WIS. STAT. § 948.02(1) (1995–96). The statue governing presumptive mandatory release determinations provides:

> (b) Before an incarcerated inmate with a presumptive mandatory release date reaches the presumptive mandatory release date specified under par. (am), the parole commission shall proceed under s. 304.06(1) to consider whether to deny presumptive mandatory release to the inmate. If the parole commission does not deny presumptive mandatory release, the inmate shall be released on parole. The parole commission may deny presumptive mandatory release to an inmate only on one or more of the following grounds:
> 1. Protection of the public.
> 2. Refusal by the inmate to participate in counseling or treatment that the social service and clinical staff of the institution determines is necessary for the inmate, including pharmacological treatment using an antiandrogen or the chemical

---

[7] The relevant portions of WIS. STAT. § 302.11 provide:

(1g)(a) In this subsection, "serious felony" means any of the following:

1. Any felony under s. 961.41(1), (1m) or (1x) if the felony is punishable by a maximum prison term of 30 years or more.

2. Any felony under s. 940.02, 940.03, 940.05, 940.09(1), 940.19(5), 940.195(5), 940.21, 940.225(1) or (2), 940.305(2), 940.31(1) or (2)(b), 943.02, 943.10(2), 943.23(1g) or (1m), 943.32(2), 946.43(1m), 948.02(1) or (2), 948.025, 948.03(2)(a) or (c), 948.05, 948.06, 948.07, 948.08, 948.30(2), 948.35(1)(b) or (c) or 948.36.

3. The solicitation, conspiracy or attempt, under s. 939.30, 939.31 or 939.32, to commit a Class A felony.

(am) The mandatory release date established in sub. (1) is a presumptive mandatory release date for an inmate who is serving a sentence for a serious felony committed on or after April 21, 1994, but before December 31, 1999.

equivalent of an antiandrogen if the inmate is a serious child sex offender as defined in s. 304.06(1q)(a).

. . . .

(c) If the parole commission denies presumptive mandatory release to an inmate under par. (b), the parole commission shall schedule regular reviews of the inmate's case to consider whether to parole the inmate under s. 304.06(1).

(d) An inmate may seek review of a decision by the parole commission relating to the denial of presumptive mandatory release only by the common law writ of certiorari.

WIS. STAT. § 302.11(1g).

¶ 9. Whether this scheme creates a protectible interest in parole requires an analysis of the language and structure of the statute to learn if the State intended to create a legitimate expectation that a prisoner would be released on his or her assigned presumptive mandatory release date. *See Felce*, 974 F.2d at 1490. This analysis considers whether the statute uses mandatory or discretionary language and otherwise limits the discretion of the parole commission. *See id.* The presumptive mandatory release scheme does not create a protectible expectation of parole for several reasons. First, in making the presumptive mandatory release determination, the Commission's discretion is virtually unlimited. WIS CONSIN STAT. § 302.11(1g)(b) explicitly requires the Commission to proceed under WIS. STAT. § 304.06(1), which grants the Commission discretionary powers to administer the discretionary parole scheme. Second, the statute uses discretionary language (*e.g.*, "may deny presumptive mandatory release") rather than mandatory language (*e.g.*, "shall").

¶ 10. We are satisfied that the statute establishing the presumptive mandatory release scheme does not create a legitimate liberty interest in being paroled. The statute permits the Commission to deny mandatory release to otherwise eligible prisoners when, in its discretion, the prisoner either poses a risk to the public or refuses to participate in necessary counseling and treatment. WIS. STAT. § 302.11(1g)(b)1, 2. Because Gendrich is not *entitled* to release on his presumptive mandatory release date, he is not entitled to any due process protections. *Felce*, 974 F.2d at 1490.[8]

¶ 11. Even if we were to hold that the presumptive mandatory release scheme created a legitimate liberty interest entitled to due process protections, we would hold that Gendrich received all of the due process to which he was entitled. In *Greenholtz*, the United States Supreme Court gave an indication of what process is due when it wrote: "The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances." *Greenholtz*, 442 U.S. at 16. Gendrich was given a hearing before a member of the Commission, and at that hearing, he had the opportunity to state his case for parole and to challenge the information in his prison record. After the conclusion of the hearing, the Commission gave

---

[8] "The procedural guarantees of the due process clause apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *State ex rel. First Nat'l Bank v. M & I Peoples Bank of Coloma*, 95 Wis. 2d 303, 310, 290 N.W.2d 321 (1980).

Gendrich a written explanation of why he was denied release on his mandatory release date.[9]

¶ 12. Gendrich also challenges the Commission's decision as being unsupported by the evidence. The test on certiorari review is the substantial evidence test. *Madison Teachers, Inc. v. WERC*, 218 Wis. 2d 75, 85, 580 N.W.2d 375 (Ct. App. 1998) (citation omitted). The test is not whether a preponderance of the evidence supports the Commission's determinations, but whether reasonable minds could arrive at the same conclusion reached by the Commission. *Id.* Moreover, when reviewing the record, we look for evidence which supports the decision made by the Commission, not for evidence which might support a contrary finding that the Commission could have made, but did not. *Id.* at 85–86. We will set aside the Commission's decision to deny parole only if our review of the record convinces us that "a reasonable person, acting reasonably, could not have reached the decision from the evidence and its inferences." *Id.* at 86.

---

[9] The Commission's written reasons for denying release incorporated both the risk to the public and Gendrich's failure to complete required counseling and treatment. WIS. STAT. § 302.11(1g)(b)1, 2.

> You have not served sufficient time for punishment noting the sexually assaultive nature of your offending. Your institution conduct record has been acceptable. You participated in the Denier's Program but are not enrolled in [Sex Offender Treatment] as your case is still in appeal status and you continue to deny your involvement in the sexual assault. As such, you remain an untreated sex offender whose release would continue to involve an unreasonable risk to the public. As we discussed today, as a PMR case, the possibility exists that you could be held in prison beyond your MR date unless you enter and complete treatment programming successfully. Your parole plan seems workable but will require final agent approval.

¶ 13. We have reviewed the return to the writ of certiorari and find that there is substantial evidence to support the Commission's conclusion that Gendrich's release would pose a substantial risk to the public because he remains an untreated sex offender. Gendrich has completed the "Denier's Program" but has not yet completed Sex Offender Treatment. Early during his incarceration, he refused to participate in the treatment program because he was still pursuing an appeal of his conviction. Recently, he has been on the institution's waiting list for Sex Offender Treatment. No matter the reason for his not participating in treatment, a reasonable person could conclude that as an untreated sex offender, Gendrich poses a substantial risk to the public.

*By the Court.*—Order affirmed.