STATE of Wisconsin EX REL. Darrent BRITT,
Petitioner-Appellant,†

v.

Jane GAMBLE and Deirdre Morgan, Respondents-
Respondents.

Court of Appeals

*No. 02–0278. Submitted on briefs June 20, 2002.—Decided
August 21, 2002.*

2002 WI App 238

(Also reported in 653 N.W.2d 143.)

————

† Petition to review denied 12-10-02.

On behalf of the petitioner-appellant, the cause was submitted on the brief of *Darrent Britt*, pro se.

On behalf of the respondents-respondents, the cause was submitted on the brief of *David E. Hoel*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. ANDERSON, J. Darrent Britt appeals a final order quashing his petition for writ of habeas corpus, dismissing his action and remanding him to the custody of the Wisconsin Department of Corrections (DOC) and Warden Jane Gamble. We agree with the trial court that the Wisconsin Parole Commission's (WPC) action on Britt's parole application was discretionary and taken in the interest of the public. We further agree that WIS. STAT. § 304.06(1r) (1989–90) neither created nor conferred a due process liberty interest in parole release, and its repeal merely affects a petitioner's opportunity to take advantage of a provision for early release. Therefore, we affirm.

¶ 2. The facts are not in dispute. Britt is an inmate confined to Kettle Moraine Correctional Institution (KMCI), Plymouth, Wisconsin. He is in the custody of Warden Gamble. Deirdre Morgan is the chairperson of the WPC. Morgan has such duties as are set forth in the Wisconsin Statutes and the Wisconsin

Administrative Code—in particular, WIS. STAT. §§ 15.145(1), 304.01, 304.06 and WIS. ADMIN. CODE § PAC 1 (1999–2000).[1]

¶ 3. Britt is in the custody of the DOC by virtue of a criminal judgment of conviction issued on September 29, 1992, by the circuit court for Milwaukee county.[2] He was sentenced on that date to a term of imprisonment for thirty-five years (less credit for 129 days) upon a finding of guilt for the crime of felony murder. While confined to prison, Britt obtained his high school equivalency diploma (HSED).

¶ 4. On November 20, 2001, Britt filed a petition for writ of habeas corpus contending that WIS. STAT. § 304.06(1r) (1989–90), effective at the time of his crime, created a constitutionally protected liberty interest and that he was unlawfully restrained of his liberty at his initial parole consideration because the parole commission did not properly apply the standard set forth in § 304.06(1r) (1989–90) and instead improperly considered factors set forth in WIS. ADMIN. CODE § PAC 1.06(7).

¶ 5. WISCONSIN STAT. § 304.06(1r) (1989–90) provided in relevant part:

> a. The parole commission shall grant release on parole, *unless there are overriding considerations not to do so,* to any inmate who is eligible for parole under sub. (1) and meets either of the following conditions:

[1] All Wisconsin statute and administrative code references are to the 1999–2000 version unless otherwise noted.

[2] Inmates with Wisconsin sentences are committed to the legal custody of the DOC. *Evers v. Sullivan,* 2000 WI App 144, ¶¶ 12–14, 237 Wis. 2d 759, 615 N.W.2d 680, *review denied,* 2000 WI 121, 239 Wis. 2d 312, 619 N.W.2d 94 (Wis. Oct. 17, 2000) (No. 00–0127).

. . . .

2. The inmate did not have a high school diploma, a high school equivalency diploma or a certificate of general educational development at the time of his or her admission to state prison and the inmate thereafter obtained a high school equivalency diploma or a certificate of general educational development while incarcerated in state prison. (Emphasis added.)

¶ 6. WISCONSIN ADMIN. CODE § PAC 1.06(7) states:

A recommendation for parole and a grant of parole shall be made *only after the inmate has:*

(a) Become parole-eligible under s. 304.06, Stats., and s. PAC 1.05;

(b) *Served sufficient time so that release would not depreciate the seriousness of the offense.*

(c) Demonstrated satisfactory adjustment to the institution and program participation at the institution;

(d) Developed an adequate parole plan; and

(e) *Reached a point at which, in the judgment of the commission, discretionary parole would not pose an unreasonable risk to the public.* (Emphasis added.)

¶ 7. WISCONSIN STAT. § 304.06(1r) was created by 1989 Wis. Act 31, §§ 1699 and 1700m. It became effective on January 1, 1990. 1989 Wis. Act 31, § 3203(23). It was then repealed effective July 9, 1996. 1995 Wis. Act 444. Britt's parole consideration took place in December 2000. Thus, although § 304.06(1r) (1989–90) was in effect at the time Britt committed his crime, it was no longer in existence by Britt's initial parole eligibility date (PED).

694

¶ 8. On November 26, 2001, the trial court issued a writ of habeas corpus. In response to the writ, Morgan filed a return and affidavit in which the following was established: in December 2000, Britt had his first parole consideration in conjunction with his initial PED; as a result of this December 2000 parole consideration, Britt was not released on parole; Britt's new PED was set for February 20, 2005; Britt's parole consideration involved the factors set forth in WIS. ADMIN. CODE § PAC 1.06(7) and although Britt was found to have attained statutory eligibility for parole, to have developed an adequate parole plan, and to have satisfactory institution adjustment and program participation, the WPC also found that Britt had not served sufficient time for punishment and that release at the time would involve an unreasonable risk to the public. The WPC comments on the parole commission action form were as follows:

> This is your first time in prison. You have served almost 9 years of a 35–year sentence for Felony Murder. While robbing individuals in an apartment complex, you shot and killed one of the victims. The seriousness of this will require that you serve a significant amount of time in order to address the issue of punishment. It is noted you were on probation as both a juvenile and an adult and it is unfortunate that these experiences did not deter you from further criminal behavior. Your institution adjustment has been satisfactory and it will be important to maintain this. You initially had some difficulties and received a major ticket for use of intoxicants but this was more than a year ago so there has been improvement. You have completed CGIP, received your HSED and have been involved in vocational training. You still need AODA 5B and you are frustrated that you have been unable to enter this so far. You will need to be patient regarding this and successfully complete this when the time frame is appropriate.

You claim you accept responsibility for your offense but that was not readily apparent in some of your statements. You need to realize that you took someone's life and this will require the passage of much more time in order for your risk level to be sufficiently lowered and for release to be possible. Eventually long term monitoring at minimum will be required to try and accomplish this.

The length of this deferral will require the approval of the Chairman of the Parole Commission.

¶ 9. A deferral period of forty-eight months was approved. Subsequently, Morgan received a letter from Britt dated October 10, 2001, asking for a shorter deferral period and reconsideration under WIS. STAT. § 304.06(1r) (1989–90). In response, Britt was informed that his letter would be placed in his file and that the WPC would review it prior to his new PED. WISCONSIN ADMIN. CODE § PAC 1 does not provide for a formal appeal process from the parole consideration decision, only an opportunity for an inmate to comment as set out in § PAC 1.07(7).[3]

¶ 10. Upon Morgan's examination of Britt's file, she concluded that while Britt had obtained his HSED during incarceration, on December 5, 2000, there were, and continued to be, overriding considerations not to grant him release on parole for the reasons set forth in the parole commission action form.

---

[3] WISCONSIN ADMIN. CODE § PAC 1.07(7) provides:

The inmate shall be afforded an opportunity to comment on the decision following the commissioner's explanation of the decision, orally if an interview has been provided, or in writing if an interview has not been provided.

¶ 11. On January 4, 2002, a hearing was held before the trial court. At the conclusion of the hearing, the court determined that Britt was not illegally restrained of his liberty, that a judgment of conviction authorized his confinement, and that he was lawfully in the custody of the DOC. The court specifically noted that while WIS. STAT. § 304.06(1r) (1989–90) had created a presumption in favor of parole release where an inmate had achieved his or her HSED, that presumption had not mandated automatic release.

¶ 12. The trial court also found that failure to apply this presumption of parole release does not necessarily increase the period of a prisoner's incarceration because the WPC has broad discretion in determining whether overriding factors are present to deny parole. In addition, the court determined that the purpose of WIS. STAT. § 304.06(1r) (1989–90) was not to punish prisoners, but instead to protect the public. The court found that the WPC's action on Britt's parole application was discretionary and taken in the interest of the public. The court also stated:

> The repeal of the statute in question, Section 304.06 (1)(r) [sic] merely effects [sic] the petitioner's opportunity to take advantage of a provision for early release. This is akin to completing an AODA program or similar program while institutionalized which would obviously put the petitioner in better stead with the Parole Commission.
>
> Also, the Petitioner, the Court believes, has no due process liberty interest in the provisions of a statute which are no longer in effect. Moreover that statute . . . neither created nor conferred a due process liberty interest in parole release. The petitioner may have obtained his GED while institutionalized but ostensibly there remains the overriding considerations which the

697

Parole Commission in its discretion have found to interdict Mr. Britt's parole at this time.

¶ 13. The trial court proceeded to quash Britt's writ of habeas corpus, dismiss his action and order him remanded to the custody of the DOC and Gamble. Britt filed a motion for reconsideration, which was summarily denied by the trial court on January 23, 2002. Britt appeals.

■

¶ 14. The application of a statute to undisputed facts is a question of law that we review de novo. *State v. Wilke*, 152 Wis. 2d 243, 247, 448 N.W.2d 13 (Ct. App. 1989). Although we decide such questions independently, we may still benefit from the trial court's analysis. *Meyer v. Sch. Dist. of Colby*, 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999).

■

¶ 15. The refusal to grant discretionary parole is reviewable by common law certiorari. *Coleman v. Percy*, 96 Wis. 2d 578, 584, 292 N.W.2d 615 (1980).[4] This is an action in common law habeas corpus, *see State ex rel. Szymanski v. Gamble*, 2001 WI App 118, ¶ 6, 244 Wis. 2d 272, 630 N.W.2d 570, *review denied,* 2001 WI 114, 246 Wis. 2d 175, 634 N.W.2d 321 (Wis. Aug. 27, 2001) (No. 00–2272), which is an equitable doctrine allowing a court to tailor a remedy applicable to the particular facts. *State ex rel. Richards v. Leik*, 175 Wis. 2d 446, 452, 499 N.W.2d 276 (Ct. App. 1993). Here, we must

---

[4] Review by statutory certiorari has different characteristics than review by common law certiorari because the former is of right and the latter is discretionary. *Coleman v. Percy*, 96 Wis. 2d 578, 584 n.5, 292 N.W.2d 615 (1980).

determine whether Britt is legally confined to the custody of the DOC. *See Szymanski*, 2001 WI App 118 at ¶ 7.

¶ 16. On appeal, Britt argues that his confinement is unlawful because the statute in effect at the time of his crime, WIS. STAT. § 304.06(1r) (1989–90), created a constitutionally protected liberty interest in parole release, that he did not receive the substantive due process rights mandated by § 304.06(1r) (1989–90), and that denying him parole under § 304.06(1r) (1989–90) violates the "ex post facto clause."

¶ 17. We address the substance of Britt's appellate arguments in order. Britt's first claim is that because he had met a condition necessary for release on parole (i.e., obtaining his HSED while incarcerated) on the date of his PED, he had a protected liberty interest in his release on parole pursuant to WIS. STAT. § 304.06(1r) (1989–90). In short, Britt concludes that because a state may create a liberty interest in release on parole by using mandatory language such as "shall," *see Felce v. Fiedler*, 974 F.2d 1484, 1490 (7th Cir. 1992), and because § 304.06(1r) (1989–90) used the word "shall," Wisconsin has created such an interest. We disagree.

¶ 18. First, as already noted, WIS. STAT. § 304.06(1r) (1989–90) was repealed before Britt's PED; further, the legislative history does not indicate that the presumption created by § 304.06(1r) (1989–90) should continue for inmates who were sentenced during the dates when the statute was in effect. *See* 1995 Wis. Act 444. Thus, we hold that Britt does not have a liberty interest derived from § 304.06(1r) (1989–90) because it was not in effect at the time of his parole consideration and was not intended by our legislature to apply to his parole consideration.

¶ 19. That determined, we nonetheless address the law of WIS. STAT. § 304.06(1r) (1989–90) and note that even when it was in effect, there was no court decision that established that § 304.06(1r) (1989–90) created a due process liberty interest in parole release. The issue was raised but not decided in *State ex rel. Hansen v. Dane County Circuit Court*, 181 Wis. 2d 993, 996–98, 513 N.W.2d 139 (Ct. App. 1994). Later, in *State ex rel. Saenz v. Husz*, 198 Wis. 2d 72, 80–81, 542 N.W.2d 462 (Ct. App. 1995), we treated the liberty interest issue as an open question because, unlike Britt, Saenz did not assert that he was denied parole without procedural due process.

¶ 20. Today, we conclude that WIS. STAT. § 304.06(1r) (1989–90) did not create a due process liberty interest in parole release *even when* it was in effect at the time of an inmate's parole consideration. While not directly on point, this conclusion is easily derived from our rationale in *State ex rel. Gendrich v. Litscher*, 2001 WI App 163, 246 Wis. 2d 814, 632 N.W.2d 878. In *Gendrich*, the inmate was sentenced subject to Wisconsin's presumptive mandatory parole release scheme. *Id.* at ¶ 8; *see also* WIS. STAT. § 302.11(1g). Under this scheme, a prisoner sentenced for a serious felony between April 21, 1994, and December 31, 1999, has a mandatory release date that is presumptive, but the WPC can discretionarily deny such parole release to an inmate on the subjective determination of "protection of the public." *Gendrich*, 2001 WI App 163 at ¶ 8; *see also* § 302.11(1g)(b)1.

¶ 21. Like Britt, Gendrich argued that he had a protectible liberty interest in release on parole. *Gendrich*, 2001 WI App 163 at ¶ 2. We held that the presumptive mandatory release scheme did not create a

protectible liberty interest in release on parole because the WPC retained discretion in making the determination of whether factors existed sufficient to deny mandatory release. *Id.* at ¶¶ 9–10. Similarly, the WPC under WIS. STAT. § 304.06(1r) (1989–90) retained discretion in granting release on parole in its subjective determination of whether there were "overriding considerations" not to grant it. *Id.* As we indicated in *Gendrich*, 2001 WI App 163 at ¶ 1:

> Gendrich is serving time for a serious felony and is subject to the presumptive mandatory release date law that grants the Commission discretion in deciding whether to release a serious felon on his or her mandatory release date. Because *a discretionary act cannot create a legitimate expectation of release on the presumptive mandatory release date,* we affirm the circuit court's dismissal of Gendrich's writ of certiorari. (Emphasis added.)

So, even if we were to hold that § 304.06(1r) (1989–90) applied to Britt's parole consideration (and we do not so hold), § 304.06(1r) (1989–90) did not create a protectible liberty interest in parole release as Britt contends.

■

¶ 22. Britt's second appellate argument is that he was denied "the substantive due process rights mandated by the statute in effect when his crime was committed." His argument is that the WPC "[viewed him] under the discretionary standard set forth in sec. PAC 1.06(7), without the presumption of what the Legislature granted him under [WIS. STAT. §] 304.06(1r)" and this equates to a violation of his "constitutional rights." Again, we disagree. As already explained, Britt was not entitled to have the WPC evaluate his parole application according to a statutory standard that had been repealed

and did not apply to his case. The WPC correctly relied upon the WIS. ADMIN. CODE § PAC 1.06(7) parole factors in its discretionary authority to grant or deny parole. *See* WIS. STAT. § 304.06(1)(b).

¶ 23. Finally, Britt fails in his last assertion that "not giving [him] parole under [WIS. STAT. §] 304.06(1r) violated the ex post facto clause."[5] An ex post facto law includes "any law which was passed after the commission of the offense for which the party is being tried." *State v. Thiel*, 188 Wis. 2d 695, 701, 524 N.W.2d 641 (1994) (citation omitted).[6] When determining whether there was an ex post facto violation, we look to see whether the application of the new law violates one or more of the ex post facto clause's recognized protections. *State v. Kurzawa*, 180 Wis. 2d 502, 512, 509 N.W.2d 712 (1994). Specifically, we determine whether the application of the new law: (1) criminalizes conduct that was innocent when committed, (2) increases the penalty for conduct after its commission, or (3) removes a defense that was available at the time the act was committed. *Id.* at 512–13.

---

[5] Because Britt does not clarify, we assume that his assertion of an ex post facto violation is made under article I, § 12 of the Wisconsin Constitution which states: "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed, and no conviction shall work corruption or blood or forfeiture of estate."

[6] An ex post facto law also includes a law which "inflicts a greater punishment than the law annexed to the crime at the time it was committed . . . or which alters the situation of the accused to his disadvantage." *State v. Thiel*, 188 Wis. 2d 695, 701, 524 N.W.2d 641 (1994) (emphasis and citation omitted).

¶ 24. Only the second consideration is at issue here: whether the WPC's application of WIS. ADMIN. CODE § PAC 1.06(7), along with its adherence to the legislative intent that the HSED presumption no longer apply to any prisoner, increased the penalty for Britt's conduct after its commission. Britt's thirty-five year term of incarceration was not extended; thus, the penalty for his conduct was not increased after its commission. A violation of the ex post facto clause does not lie.

¶ 25. We agree with the trial court that Britt is legally confined to the custody of the DOC.

*By the Court.*—Order affirmed.