**Christopher J. McCOY, Sr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7789.**

Court of Appeals of Alaska.

Nov. 22, 2002.

Hearing Denied April 3, 2003.

Diane L. Foster and Darin B. Goff, Assistant Public Defenders, Kenai, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION ON STATE'S PETITION FOR REHEARING*

MANNHEIMER, Judge.

The State asks us to reconsider one aspect of our decision in this case: our construction of Appellate Rule 214, which declares that unpublished decisions "may not be cited in the courts of this state".

In our original opinion, *McCoy v. State*, 80 P.3d 751 (2002), we concluded that Appellate

Rule 214 forbids an attorney from arguing that an unpublished decision is "precedent" in the sense that it controls or restricts future judicial decision-making, but we also concluded that Rule 214 does not forbid an attorney from bringing an unpublished decision to a court's attention for whatever persuasive value it might have.[1] The State contends that we misconstrued Appellate Rule 214—that when the rule declares that unpublished decisions "may not be cited", it means that attorneys and judges are strictly forbidden from mentioning unpublished decisions when they argue and decide matters in the courts of Alaska.

### The basis of the State's request for rehearing

The State bases its argument primarily on two sources: (1) a memorandum written to the Alaska Supreme Court by a former Clerk of the Appellate Courts, Robert D. Bacon, and (2) a memorandum prepared by the court's staff attorney, Andrew M. Hemenway, analyzing the state of the law with respect to unpublished decisions. Both Mr. Bacon's memorandum and Mr. Hemenway's memorandum were written in October 1980, when the supreme court was revising the Alaska Rules of Appellate Procedure and was considering the merits of proposed Appellate Rule 214.

From the content of Mr. Bacon's memorandum, and from the existence of Mr. Hemenway's memorandum, it appears that the supreme court had questions about the practice of issuing unpublished opinions, even though unpublished decisions were allowed under the then-existing rule (former Appellate Rule 26). In his memorandum, Mr. Bacon assured the supreme court that proposed Appellate Rule 214 embodied "the national mainstream" answer to the question of "whether ... unpublished decisions may be cited". Mr. Bacon also sought to assure the supreme court that limiting the citation of unpublished decisions was good policy.

Mr. Bacon argued that a "no citation" rule would benefit the legal community because, if attorneys were allowed to cite unpublished opinions, this practice would favor "the specialist over the generalist, the large law firm over the small, the government agency over those challenging its action, and ... insurance carrier[s] over those seeking to recover from [them]". In other words, Mr. Bacon argued that it would be unfair to allow lawyers to cite unpublished decisions. Mr. Bacon's argument was premised on the assumption that only a relatively few litigators—institutional litigants, large law firms, and others who regularly litigated cases in the appellate courts—would know the contents of the courts' unpublished decisions.

Mr. Bacon also argued that if litigants were allowed to cite unpublished decisions, this would saddle the Appellate Court Clerk's Office with "the added burden of serving as a library and repository of ... unpublished decisions". That is, he assumed that no one (or only a few litigants) would have ready access to the text of unpublished opinions, thus forcing the Clerk's Office to assume the role of a reference source for all the litigants who wanted to obtain copies of unpublished opinions or who wished to search through the court's unpublished opinions in the hope of finding some pertinent material.

All of these assumptions proved to be wrong. As was pointed out in *John v. State*, 35 P.3d 53 (Alaska App.2001), "copies of [Court of Appeals] memorandum decisions have always [been distributed] to essentially every judge and lawyer who regularly practices criminal law in this state".[2] Moreover, "our memorandum decisions are now readily available on the Internet", allowing any lawyer or other interested person to search these opinions and download them.[3]

Thus, our unpublished decisions have not become an arcane body of law known to only a select few, nor has the Appellate Court Clerk's Office become the depository of semi-secret decisions. Rather, our unpublished decisions are distributed to almost all crimi-

---

1. *See McCoy,* at pages 752–754.

2. *John,* 35 P.3d at 64 (Mannheimer, J., concurring).

3. *Id.*

nal practitioners within days after the decisions are issued, and these decisions are readily accessible to everyone else.

Another of Mr. Bacon's predictions also proved to be wrong—this time, with more unfortunate consequences. In his memorandum, Mr. Bacon argued that Alaska need not worry about one potential danger of restricting the citation of unpublished opinions: "the possibility of different panels of the same appellate court rendering inconsistent decisions because the later panel is not aware of the previous unpublished decision". Mr. Bacon assumed that Alaska's appellate courts would always be aware of their own prior unpublished decisions because both courts always sit *en banc.*

This assumption may be true in the short run, but it is not true over the long term. In *John v. State,* this Court was required to address (and reverse) a twelve-year-old unpublished opinion that we ourselves had forgotten about. *John* illustrated the pitfall of issuing unpublished decisions: the problem that, "given enough time and enough change of personnel, the court 'forgets' that we issued those decisions." [4]

Thus, all of Mr. Bacon's arguments in favor of restricting the citation of unpublished opinions have proved to be based on incorrect assumptions. This fact, however, does not directly answer the State's present contention that Appellate Rule 214 was intended to prohibit attorneys and judges from mentioning unpublished opinions. Even though Mr. Bacon's arguments have proved wrong, the supreme court may have been persuaded by those arguments in 1980.

The real question is to identify what Mr. Bacon meant when he told the supreme court that proposed Appellate Rule 214 embodied the "mainstream" position with respect to the citation of unpublished opinions—or, more precisely, to identify what the supreme court thought when they promulgated the rule.

*The state of the law with regard to unpublished opinions*

The legal research that Mr. Bacon was relying on—*i.e.,* the research contained in

Mr. Hemenway's memorandum—indicated that "[m]ost of the courts which do not publish all [of] their reasoned opinions forbid citing [the unpublished opinions] except for such purposes as collateral estoppel, res judicata, or law of the case". In Mr. Hemenway's memorandum, this sentence is immediately followed by a footnote—a footnote that directs the reader's attention to law review articles which conclude that a strict interpretation of this rule had "caused problems" and had "prevented [discussion] of many useful cases". Returning to the main text of the memorandum, Mr. Hemenway then noted that the American Bar Association had recommended that litigants be allowed to cite unpublished decisions so long as copies of the pertinent decisions were provided to all parties—and that several jurisdictions had adopted the ABA's recommendation.

From all of this, it is not clear what "mainstream" position Mr. Bacon was advocating when he asked the supreme court to adopt Appellate Rule 214. Our own research reveals that many courts with "no-citation" rules similar to the one described in Mr. Hemenway's memorandum—rules that forbid citation of unpublished decisions "except for such purposes as collateral estoppel, res judicata, or law of the case"—nevertheless allow attorneys to refer to unpublished decisions for whatever persuasive power they might have, even though unpublished decisions are not "precedent" in the sense that they control or restrict future judicial decision-making.

For example, even though Virginia law declares that unpublished opinions "are not to be cited or relied upon as precedent except for the purpose of establishing res judicata, estoppel or the law of the case", the Virginia Court of Appeals recently held that "a court ... does not err by considering the rationale [of an unpublished opinion] and adopting it to the extent it is persuasive." [5]

Similarly, Minnesota Statute 480A.08, subdivision 3(c), declares that "[u]npublished

---

4. *Id.* at 65.

5. *Fairfax County School Board v. Rose,* 29 Va. App. 32, 509 S.E.2d 525, 528 n. 3 (1999) *(en banc).*

opinions of the court of appeals are not precedential". Nevertheless, the Minnesota courts have interpreted this statute as allowing attorneys to rely on unpublished decisions for their persuasive value.[6]

New Mexico takes the same approach to its "no citation" rule.[7] So does Tennessee.[8] And so does Texas.[9]

We have also found several instances in which other courts have allowed parties to cite unpublished decisions, or have assessed the reasoning or applicability of unpublished decisions, without expressly saying that unpublished decisions can be considered for their persuasive value. *See McBride v. Jones,* 803 So.2d 1168, 1171 (Miss.2002) (McRae, J., dissenting); *Whitt v. State,* 827 So.2d 869, n. 2 (Ala.Crim.App. 2001) (in which the court expressly stated that it was relying on the analysis contained in an earlier unpublished opinion); *Hammond v. State,* 260 Ga. 591, 398 S.E.2d 168, 174 (1990); *State v. Gonzales,* 63 S.W.3d 317, 319 (Mo. App.2001).

Two states, Ohio and Utah, have reached the conclusion that all decisions, published and unpublished, are equally valid as precedent. Ohio achieved this result by amending its court rules.

Until earlier this year, Rule 2(G) of the Ohio Supreme Court Rules for the Reporting of Opinions declared that unpublished decisions of Ohio's courts of appeals were not controlling authority (except for purposes of collateral estoppel, res judicata, or law of the case), but could be cited as persuasive—*i.e.,* non-binding—authority. But in May 2002, Rule 2(G) was superseded by a revised Rule 4. Section (A) of this rule declares, "Notwithstanding the prior versions of these rules, designations of, and distinctions between, 'controlling' and 'persuasive' opinions of the courts of appeals based merely upon whether they have been published ... are abolished." Section (B) adds, "All court of appeals opinions issued after the effective date of these rules [*i.e.,* after May 1, 2002] may be cited as legal authority and weighted [*sic* ] as deemed appropriate by the courts."

(In recognition of computer technology, Ohio Rule 3(B) requires that all court of appeals opinions (whether "published" or not) "be posted to the Supreme Court web site".)

The Utah Supreme Court achieved this same result by striking down a "no citation" rule promulgated by the Utah Judicial Council.[10]

---

**6.** *See Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800 (Minn.App.1993); *State v. Rosillo,* unpublished, 2001 WL 881279, *2 (Minn.App., July 31, 2001).

**7.** *See State v. Gonzales,* 110 N.M. 218, 794 P.2d 361, 370–71 (N.M.App.1990). The rule in question, New Mexico Appellate Rule 12–405(C), states: "An order, decision or memorandum opinion, because it is unreported and not uniformly available to all parties, shall not be published nor shall it be cited as precedent in any court."

**8.** *See State v. Tansil,* 72 S.W.3d 665, 667 (Tenn. Crim.App.2001); *Brown v. Knox County,* 39 S.W.3d 585, 589 (Tenn.App.2000); *State v. Kelley,* unpublished, 2002 WL 927610, *24 (Tenn. Crim.App., May 7, 2002). *But see Hickman v. Tennessee Board of Paroles,* 78 S.W.3d 285, 290 (Tenn.App.2001) (declining to rely on unpublished decisions as authority, even though the court declared that "[the] reasoning [of these decisions] is sound").

**9.** *See Hernandez v. State,* 55 S.W.3d 701, 705 (Tex.App.2001); *Davenport v. Verner & Brumley,*

P.C., unpublished, 2001 WL 969249, *2 (Tex. App., Aug. 28, 2001) (both discussing and considering unpublished opinions for their persuasive value). *But see State Farm Lloyds v. Borum,* 53 S.W.3d 877, 889 n. 7 (Tex.App.2001) (A litigant brought an unpublished decision to the attention of the court because it was apparently the sole statement by a Texas court on the pertinent question of law. The court declared, "Unpublished opinions have no precedential value and must not be cited as authority by counsel[;] we are [therefore] constrained by the appellate rules from considering [this unpublished decision] as authority.").

(Texas Appellate Rule 47.7 states: "Opinions not designated for publication by the court of appeals have no precedential value and must not be cited as authority by counsel or by a court.")

**10.** See *Grand County v. Rogers,* 44 P.3d 734, 738 (Utah 2002):

[I]t is appropriately within the discretion of the court of appeals to determine which matters require oral argument, which decisions require a full opinion, and which do not. It is not, however, within their authority, or the authority of the Judicial Council, to decide

In addition, several states have enacted rules that explicitly allow parties and judges to discuss and rely on unpublished decisions, not as controlling precedent but rather for their persuasive value.

For example, Iowa Appellate Rule 6.14(5)(b) states that unpublished appellate decisions "may be cited in a brief", but they "shall not constitute controlling legal authority". The rule requires parties to attach "a copy of the unpublished opinion . . . to [their] brief[,] accompanied by a certification that counsel has conducted a diligent search for, and fully disclosed, any subsequent disposition of the unpublished opinion". And, in recognition of the role that on-line legal databases play in the modern practice of law, the rule requires the party to "include, when available, an electronic citation indicating where the opinion may be readily accessed on line".

Oklahoma Criminal Appeal Rule 3.5(C)(3) is similar: "[A]n unpublished opinion is not binding on this Court. However, parties may cite and bring to the Court's attention the unpublished opinions of this Court provided counsel states that no published case would serve as well the purpose of which counsel cites it, and provided further that counsel shall provide opposing counsel and the Court with a copy of the unpublished opinion."

In the same vein, Michigan Rule of Court 7.215(C)(1) states that an unpublished opinion "is not precedentially binding under the rule of *stare decisis*". The rule then allows

parties to cite unpublished opinions for their persuasive value, but requires the party to "provide a copy of the [unpublished] opinion to the court and to opposing parties with the brief or other paper in which the citation appears."

And even in those states that forbid the parties from mentioning unpublished opinions, judges read unpublished opinions and pay attention to them. See *Wortel v. Somerset Industries, Inc.*, 331 Ill.App.3d 895, 264 Ill.Dec. 515, 770 N.E.2d 1211, 1220 n. 5 (2002), in which the court admitted that it reviews unpublished opinions when it researches a case. See also *State v. Locklear*, 105 Wash.App. 555, 20 P.3d 993, 997 n. 11 (2001), in which the court acknowledged that unpublished opinions are not to be cited as precedent, but then assured its readers that the court was "not aware of any unpublished opinion that is [in]consistent" with the analysis the court adopted.

Three other decisions of the Washington Court of Appeals provide a striking illustration of this judicial ambivalence. Washington Appellate Rule 10.4(h) states that "[a] party may not cite as an authority an unpublished opinion of the Court of Appeals." In *Mann v. Hobbick*, 112 Wash.App. 1032, 2002 WL 1402546 (Wash.App., July 1, 2002), the court imposed monetary sanctions on an attorney for citing an unpublished opinion. In *In re Marriage of Gilbert*, 88 Wash.App. 362, 945 P.2d 238, 240–41 (1997), the court of appeals stated that even though it found the

which of their decisions may be cited as precedent. The work of judges, the . . . decisions and opinions issued to the parties, bar, and public, is the very fabric of the common law. When judges speak on issues of law, that expression becomes part of the law until it is authoritatively revised. When the court of appeals renders a decision on an issue, that decision is automatically part of the law of this state, unless and until contravened by this court, the legislature, or the people through the processes authorized for the making of new law. For this reason, decisions of the court of appeals expressed in a memorandum decision, or in an opinion, are equally binding upon lower courts of this state, and may be cited to the degree that they are useful, authoritatively and persuasively. Such decisions are issued and distributed as are all other opinions, except for the fact that they are not published in

the Utah Advance Reports or the West reporter system. They are generally available to the bar and public through the internet service provided by the Administrative Office of the Courts, and although not "officially published," may be presented as precedential authority to a lower court or as persuasive authority to this court, so long as all parties and the court are supplied with accurate copies at the time the decision is first cited.

Obviously, if memorandum decisions are limited only to those circumstances in which the legal reasoning and the application of that reasoning to a case add nothing to the body of the law, citation of a memorandum decision will be unnecessary. Existing primary case law is adequate and more appropriate because of its more complete reasoning. But, in those rare instances when some new legal rule is inadvertently announced by way of a memo-

reasoning of an unpublished opinion "highly persuasive", it could not rely on that unpublished opinion—so, instead, the court called for supplemental briefing on the issue of whether it should adopt the analysis of the unpublished opinion. And in *Starypan v. Metropolitan Park Dist. of Tacoma*, unpublished, 105 Wash.App. 1025, 2001 WL 285827 (Wash.App., Mar. 23, 2001), when one party asked the court to strike references in the other party's brief to unpublished decisions issued by other jurisdictions, the court refused. The court ultimately declared that it had decided not to rely on the unpublished decisions, but only because the court "[did] not find [them] persuasive".[11]

We note that the Hawai'i chapter of the American Judicature Society recently submitted a report to the Hawai'i Supreme Court recommending that Hawai'i Appellate Rule 35 be amended to allow parties to rely on unpublished opinions for their persuasive value. The Judicature Society explained, "There is a problem perceived by the legal community with the continued use of summary disposition orders and, particularly, the inability to cite memorandum opinions despite the fact that these opinions appear to be of substantial length and content and often cite other case law as precedent for the conclusions." [12]

We also note that many courts allow litigants to rely on the unpublished decisions of *other* jurisdictions for whatever persuasive power those decisions might possess. *See Byrd v. Bentley*, 850 So.2d 232, 235 (Ala. 2002); *Waskel v. Guaranty National Corp.*, 23 P.3d 1214, 1220 (Colo.App.2000); *Staff of Idaho Real Estate Comm'n v. Nordling*, 135 Idaho 630, 22 P.3d 105, 109 (2001); *State v. Gibbs*, 769 N.E.2d 594, 598 n. 4 (Ind.App. 2002); *Campbell v. Markel American Insurance Co.*, 822 So.2d 617, 625 n. 4 (La.App. 2001); *Palacios v. Louisiana and Delta R.R., Inc.*, 775 So.2d 698, 702 (La.App.2000);

*State ex rel. Gendrich v. Litscher*, 246 Wis.2d 814, 632 N.W.2d 878, 882 n. 6 (2001); *State v. Allen*, 208 W.Va. 144, 539 S.E.2d 87, 103 (1999).

Turning to the federal system, half of the federal circuits have rules that explicitly allow parties and judges to rely on unpublished decisions for their persuasive value. The Sixth Circuit's Rule 28(g) is typical of these provisions:

> (g) *Citation of Unpublished Decisions.* Citation of unpublished decisions in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case. If a party believes, nevertheless, that an unpublished disposition has precedential value in relation to a material issue in a case, and that there is no published opinion that would serve as well, such decision may be cited if that party serves a copy thereof on all other parties in the case and on this Court. Such service shall be accomplished by including a copy of the decision in an addendum to the brief.

The Fourth Circuit's Rule 36(c), the Eighth Circuit's Rule 28A(i), the Tenth Circuit's Rule 36.3, and the Eleventh Circuit's Rule 36–2 contain similar language.

The Fifth Circuit's Rule 47.5 distinguishes between unpublished opinions issued before January 1, 1996 and those issued on or after that date. Subsection 3 of Rule 47.5 states that unpublished opinions issued before 1996 have the force of binding precedent—although they "normally [should] be cited only when the doctrine of res judicata, collateral estoppel or law of the case is applicable". Subsection 4 then declares that unpublished decisions issued on or after January 1, 1996 are not binding precedent—but parties and judges may freely rely on them for their persuasive value.[13]

---

randum decision, authorizing citation to that decision will assure consistency in the law.

**11.** *Starypan*, 105 Wash.App. 1025, 2001 WL 285827 at *2 n. 3.

**12.** *Flores v. Barretto*, 99 Hawai'i 270, 54 P.3d 441, 447 n. 1 (2002) (Acoba, J., concurring)

(quoting American Judicature Society, Hawai'i chapter, *Report of the AJS Committee Reviewing Unpublished Opinions* (June 14, 2002), at p. 4).

**13.** *United States v. Rodriguez–Montelongo*, 263 F.3d 429, 433 n. 3 (5th Cir.2001); *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 213 n. 1 (5th Cir.2000).

And, in a striking departure from its past practice, the District of Columbia Circuit recently decided to give equal precedential weight to published and unpublished decisions alike. The D.C. Circuit's Rule 28(c)(1)(A) states that unpublished decisions issued before 2002 are governed by the Circuit's old rule—*i.e.*, they are not to be cited except for purposes of establishing res judicata, collateral estoppel, or law of the case. But the next subsection, Circuit Rule 28(c)(1)(B), declares that all of the Circuit's unpublished decisions issued on or after January 1, 2002 may be cited as precedent without limitation.

Even in the remaining federal circuits— the ones that do not allow citation of unpublished decisions for persuasive value—it is obvious that the judges are aware of, and read, unpublished opinions. For instance, in *Acequia, Inc. v. Prudential Ins. Co. of America*, the Seventh Circuit discussed an unpublished opinion of the Ninth Circuit (a circuit that does not allow citation of unpublished opinions), but concluded that the unpublished opinion was unpersuasive.[14] The First Circuit engaged in similar analysis of an unpublished decision from the Ninth Circuit in *United States v. Mojica–Baez*.[15] In *Sandvik AB v. Advent International Corp.*, the Third Circuit considered an unpublished decision of the Fourth Circuit.[16] And in *Patton v. Cox*, the Ninth Circuit considered an unpublished decision of the Third Circuit.[17]

Moreover, when an unpublished decision comes from a circuit that allows citation of its unpublished decisions for their persuasive value, the "no citation" circuits do not hesitate to examine the unpublished decisions of their sibling circuits.[18]

It also appears that the "no citation" circuits are becoming sensitive to the criticism that their rules potentially allow panels to issue inconsistent or even irreconcilable decisions. The Ninth Circuit amended its "no citation" rule to allow parties to cite unpublished decisions to support a request for publication or to support a petition for rehearing (either by the panel or *en banc*) if the unpublished decision demonstrates the existence of conflicting decisions within the circuit.[19] And even though the First Circuit has no analogous rule, a panel of the First Circuit recently went out of its way to assure readers that its decision was fully consistent with prior unpublished decisions from that circuit.[20]

### Our construction of Alaska Appellate Rule 214

Many of the authorities we have just discussed are tangential to the issue confronting us in the present case. Our task is not to frame the best possible rule regarding unpublished opinions. Rather, our task is to construe the rule that we have—Alaska Appellate Rule 214. We must determine what the Alaska Supreme Court intended to accomplish when it promulgated Appellate Rule 214.

Current judicial treatment of unpublished opinions may not provide a firm answer to this question. But this Court's own Standing Order Number 3 provides a contemporaneous indicator of how Rule 214 was viewed when it was initially promulgated.

This Court adopted its Standing Orders in March 1981, shortly after the supreme court promulgated Appellate Rule 214 (and the rest of the revised Rules of Appellate Procedure). Standing Order Number 3 sets forth the "Guidelines for Publication of Court of Appeals Decisions".

**14.** 226 F.3d 798, 805 (7th Cir.2000).

**15.** 229 F.3d 292, 308 (1st Cir.2000).

**16.** 220 F.3d 99, 103–04 (3rd Cir.2000).

**17.** 276 F.3d 493, 498–99 (9th Cir.2002).

**18.** *See McClendon v. City of Columbia*, 305 F.3d 314, n. 9 (5th Cir.2002) (*en banc*) (Parker, J., dissenting); *Acosta v. Artuz*, 221 F.3d 117, 123

(2nd Cir.2000); *United States v. Leon*, 203 F.3d 162, 164 n. 3 (2nd Cir.2000); *Barmes v. United States*, 199 F.3d 386, 389 n. 1 (7th Cir.1999); *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 831 n. 1 (9th Cir.1999).

**19.** Ninth Circuit Rule 36–3(b)(iii).

**20.** *See Utica Mutual Insurance Co. v. Weathermark Investments, Inc.*, 292 F.3d 77, 84 n. 4 (1st Cir.2002).

Paragraph 6 of those Publication Guidelines specifies that every unpublished decision of this Court is to be distributed to all the judges of Alaska. Paragraph 6 further specifies that unpublished decisions are to be made available upon request to all members of the public. This clause quickly led to the routine distribution of all of our unpublished decisions to the Department of Law, the Public Defender Agency, and other lawyers who submitted a standing request to receive them.

In other words, within months of the supreme court's enactment of Appellate Rule 214, this Court issued a standing order that mandated distribution of all our unpublished decisions to every Alaska judge and to every other person who wanted a copy. The purpose of Standing Order Number 3 was to make sure that all the judges of this state and all other interested attorneys and litigants were apprised of every one of our unpublished decisions.

This purpose is inconsistent with the State's current suggested interpretation of Appellate Rule 214. For if Appellate Rule 214 was intended to guarantee that unpublished decisions were never referred to again (aside from establishing collateral estoppel, res judicata, or law of the case), why would this Court require distribution of all its unpublished decisions to every judge in Alaska and to every attorney or litigant who expressed an interest? It makes no sense to require all judges and all interested attorneys to receive copies of our unpublished decisions unless we believed that this information might benefit them—by providing them with a growing library of written decisions that would give them insight into how this Court was applying the law.[21]

Standing Order Number 3—in particular, Paragraph 6's mandate of a wide and unrestricted distribution of this Court's unpublished decisions—is fundamentally at odds with the State's suggestion that unpublished decisions are to be read only by the trial judge and the parties, then never mentioned again. Rather, our Standing Order Number 3 strongly suggests that unpublished opinions were intended to be discussed by judges and attorneys for whatever persuasive power they might have.

As explained above, Standing Order Number 3 was issued in March 1981, shortly after the supreme court promulgated Appellate Rule 214. There has never been any suggestion that our Standing Order is inconsistent with Appellate Rule 214.

Based on this history, we align ourselves with Minnesota, New Mexico, Tennessee, Texas, and Virginia—states that have interpreted their "no citation" rules to mean only that unpublished opinions are not precedent for purposes of *stare decisis*. We reaffirm our holding that, although Appellate Rule 214 forbids citation of unpublished decisions as precedent (*i.e.*, as decisions that control or restrict future judicial decision-making), the rule does not forbid judges and lawyers from relying on unpublished decisions for whatever persuasive power those decisions might have.

---

21. *See John v. State,* 35 P.3d at 64–65 (Mannheimer, J., concurring).