**STATE of Missouri, Plaintiff–Respondent,**

v.

**Cynthia GONZALES, Defendant–Appellant.**

No. 24130.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 31, 2001.

Irene Karns, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

A jury convicted Cynthia Gonzales ("Defendant") of leaving the scene of a motor vehicle accident in violation of § 577.060.[1] She appeals and contends the trial court committed reversible error by allowing the jury to hear her post-arrest statement and permitting a police officer to testify concerning his interview of Defendant. Defendant's argument for suppression of this evidence stems from her claim that she

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

was unlawfully "seized" or arrested. However, Defendant voluntarily testified on her own behalf and her testimony amounted to a confession of the crime for which she was convicted; consequently, the evidence about which she now complains was merely cumulative. Under the circumstances, admission of her inculpatory statement, even if erroneous, was harmless error beyond a reasonable doubt. This court affirms the judgment of conviction and sentence.

Shortly after midnight on December 23, 1999, Defendant and her boyfriend, Zied Al–Talaq ("Al–Talaq") left a bar in Joplin, Missouri. Previously, they had been drinking alcohol at Defendant's home and continued doing so at the bar. After leaving the bar, the couple got into a Pontiac Grand Prix automobile with Defendant driving. Al–Talaq argued with Defendant, demanded that he be allowed to drive, and told her which way to go. While still in Joplin with Defendant at the wheel, the front of the car struck a Jeep motor vehicle in the side at an intersection. The Jeep, which was occupied by four persons, overturned. The driver of the Jeep was fatally injured in the accident, and one of the passengers sustained a severe, disabling brain injury.

Defendant's trial testimony concerning post-accident events included the following:

"Q [to Defendant by her attorney]: Immediately after the collision did you get out of the car?

"A. Yes, I did.

"Q. Did [Al–Talaq] get out of the car?

"A. Yes.

. . . .

"Q. At that point in time ... you assumed yourself that somebody had been injured in this accident, didn't you?

"A. Yes.

. . . .

"Q. But you didn't stay at the scene, did you?

"A. No, I didn't.

. . . .

"Q. [Y]ou drove off?

"A. Yes, I did.

. . . .

"Q. But didn't you ... know that it was against the law?

"A. Yes, I did. At the time I was so distraught that I couldn't even think...."

After Defendant drove off, she and Al–Talaq went to a convenience store where they bought gas for the car. They discovered, however, the car could no longer be driven as the antifreeze was gone. Thereon, Al–Talaq called for a tow truck. While the couple waited for the tow truck, police officers arrived at the store. Although Defendant saw them, she did not tell them about the accident. In explanation, Defendant told the jury:

"I was just afraid and I was wrong.... I should have told the officers ... It was wrong that I left the scene. I was wrong that I didn't go up and help those kids...."

When the tow truck driver, Marvin Phillippi, arrived, Al–Talaq instructed him to tow the damaged car to Pittsburg, Kansas. Although Al–Talaq and Defendant had called a cab for themselves, Phillippi suggested they ride with him, and the couple accepted the proposal.

Shortly after Phillippi crossed the Kansas state line, he received a telephone call from a Jasper County, Missouri, dispatcher. During the call, the officer asked Phillippi to return to Missouri and instructed him to get out of the tow truck as soon as he could after getting to Missouri. Phillippi did as requested and told Defendant

and Al–Talaq that his boss had called him and needed to switch cell phones with him.

After Phillippi turned around and started back to Missouri, Defendant wanted out of the truck and said she would walk the five miles to Pittsburg. Phillippi assured Defendant it would just take a few seconds to switch phones and continued his return to Missouri. When Phillippi got to a stop sign at Highway 171, Defendant tried to stop the truck by pulling the gear shift and holding it in neutral. Phillippi told Defendant there was a vehicle coming, and he needed to get out of the intersection. Defendant relented after Phillippi assured he would pull over just up the road. Phillippi then drove across the state line, stopped, and got out of the truck. Shortly thereafter, officers arrived and took Defendant and Al–Talaq into custody.

Later that morning, at approximately 9:45 A.M., a Joplin police officer ("Van Lear") interviewed Defendant. After Van Lear went through the *Miranda* procedure with Defendant, she stated she did not want an attorney and wished to talk about the case. She then gave Van Lear an inculpatory statement which was audio-recorded.

After Defendant was charged with leaving the scene of an accident, involuntary manslaughter, and second degree assault, she moved to suppress her post-arrest statement. The court overruled her motion and admitted the statement in evidence over her objection. The jury convicted Defendant of leaving the scene of an accident, and this appeal followed.[2]

In her single point relied on, Defendant maintains the trial court committed reversible error when it admitted her post-arrest

audio-recorded statement into evidence and allowed officer Van Lear to testify about the circumstances surrounding the statement. As we understand it, Defendant's position is that the tow truck driver, Phillippi, unlawfully seized or arrested her and illegally returned her to Missouri at the request of Missouri law enforcement officers. Based on that premise, Defendant cites an unpublished opinion, *State v. Galazin*, No. 57900, 2001 WL 49964 (Mo. App. W.D. January 23, 2001)(since overturned by the Supreme Court of Missouri), for the proposition that "[w]hen a police officer arrests outside of the territorial limit of his authority, the exclusionary rule is the appropriate remedy."[3] The state responds by citing authority which suggests that Defendant's underlying premise, i.e., she was unlawfully seized and returned to Missouri, is fatally flawed.

We need not decide which of the above-mentioned views is correct. This follows because even if Defendant's statement "should have been suppressed, its receipt into evidence was harmless error because Defendant's voluntary testimony amounted to a confession to which the challenged evidence was merely cumulative." *State v. Patino,* 12 S.W.3d 733, 740 (Mo.App.1999). *See State v. McDaniel,* 987 S.W.2d 444, 446[4] (Mo.App.1999); *State v. Pate,* 859 S.W.2d 867, 870–72[4] (Mo.App.1993) (citing *Motes v. United States,* 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900)).

Since Defendant's testimony here amounted to a confession of leaving the scene of an accident, this court, consistent with the foregoing cases, holds that Defendant's audio-taped statement was harmless

---

2. Although the jury's decision is somewhat puzzling, Defendant was acquitted of the manslaughter and assault charges.

3. Following transfer of *Galazin* to the Supreme Court of Missouri, it affirmed the trial court's judgment of conviction and sentence of the accused. *State v. Galazin,* 58 S.W.3d 500 (Mo.banc 2001).

error beyond a reasonable doubt. Point denied.

The judgment of conviction and sentence is affirmed.

MONTGOMERY, and BARNEY, JJ., concur.

