**Christopher J. McCOY, Sr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7789.**

Court of Appeals of Alaska.

Aug. 30, 2002.

Rehearing Denied Oct. 4, 2002.

Opinion on Rehearing Nov. 22, 2002.

Diane L. Foster and Darin B. Goff, Assistant Public Defenders, Kenai, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

John W. Wolfe, Assistant District Attorney, Kenai, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

After reaching a plea bargain with the State, Christopher J. McCoy, Sr., pleaded no contest to one count of third-degree assault.[1] Superior Court Judge Harold M. Brown imposed 4 years' imprisonment with all but 18 months suspended. In this appeal, McCoy does not challenge his sentence. Instead, he argues that Judge Brown erred when he denied McCoy's motion to strike certain portions of the presentence report. Because we reject McCoy's arguments, we affirm the superior court.

*The challenged hearsay statements*

Before sentencing, McCoy moved to strike certain paragraphs from the "collateral contacts" section of the presentence report and two paragraphs from an addendum to the presentence report that contained informa-

1. AS 11.41.220(a)(1).

tion about other assaultive conduct by McCoy. McCoy argued the purportedly objectionable paragraphs contained unverified hearsay statements.

■ Judge Brown ruled that the hearsay statements in the presentence report were sufficiently trustworthy for him to rely on them unless McCoy presented a challenge to their accuracy. He reasoned that the information in the addendum came from police reports in which the victim of the assaults, Michelle McCoy, reported her observations to the police. Judge Brown also noted that the addendum contained "confirming information as to what [the police] did in response." Judge Brown concluded that the other statements in the presentence report, "even though they might be so-called third-hand information, [are] the type of information that the court can consider verified for the purpose of ... this sentencing process."

In *Nukapigak v. State*,[2] the Alaska Supreme Court held that hearsay statements can be considered during sentencing if they are "sufficiently verified to appear trustworthy and the defendant was given the opportunity to deny [the truth of the statements] or present contrary evidence of his own."[3] The court defined "verified" as "corroborated or substantiated by supporting data or information."[4]

In that case, the presentence investigator spoke with several residents of Nukapigak's village. The presentence report included the villagers' descriptions of Nukapigak's misconduct.[5] Even though the villagers' reports were not based on first-hand knowledge, the supreme court ruled that this information was verified. The villagers were identified in the presentence report, and Nukapigak, who was supplied a copy of the report, was entitled to challenge the accuracy of the reports or offer contrary evidence.[6]

Here, the probation officer reported that McCoy's father-in-law described a history of domestic violence in the McCoy home. Included in the report were the father-in-law's description of the difficulties his grandchildren had when in McCoy's home, the grandchildrens' complaints to him, and his description of the domestic violence against his daughter caused by McCoy. The probation officer's source, the father-in-law, is identified and whatever data the father-in-law provided that was not based on his first-hand knowledge was attributed to either his grandchildren or his daughter. Under the rationale of *Nukapigak*, this constitutes verified information. Therefore, Judge Brown was not required to strike this material from the presentence report.

*Whether a presentence investigator may review and use the information in a defendant's juvenile probation file without first obtaining special permission from the superior court*

■ McCoy objected to the portion of the presentence report that discussed his contacts with the juvenile justice system (contacts that did not lead to formal adjudications of delinquency). He argued that a presentence investigator is not authorized to examine a defendant's juvenile records without first obtaining the superior court's permission.

■ We first address a subsidiary question of law. When McCoy's attorney argued that the presentence investigator had no authority to use information from McCoy's juvenile file, the attorney asked Judge Brown to consider one of this Court's memorandum opinions, *State v. Westerlin*,[7] because Chief Judge Bryner's concurring opinion in *Westerlin* discusses (but reaches no conclusion regarding) this issue. The State responded by asking Judge Brown to strike McCoy's pleading; the State asserted that the defense attorney had violated Alaska Appellate Rule 214(d), which declares that memorandum de-

---

2. 562 P.2d 697 (Alaska 1977), *aff'd on reh'g*, 576 P.2d 982, 984–85 (Alaska 1978).

3. *Id.* at 701.

4. *Id.* at 701, n. 2.

5. *See Nukapigak v. State*, 576 P.2d 982, 983 (Alaska 1978).

6. *Id.*

7. Memorandum Opinion and Judgment No. 3111 (Alaska App., March 29, 1995).

cisions of this court are "without precedential effect and may not be cited in the courts of this state."

*Black's Law Dictionary* defines "cite" as "refer to or adduce as precedent or authority." [8] McCoy's attorney did not claim that our memorandum opinion in *Westerlin* was precedent. It is arguable that the defense attorney adduced Judge Bryner's concurrence as "authority" in the broadest sense of that term—that is, as a record of what another judge thought about a legal issue, for whatever persuasive power it might have. But we do not read Appellate Rule 214(d) to preclude this. Rather, the rule forbids reliance on a memorandum opinion as "authority" in a narrower sense—what *Black's Law Dictionary* calls "imperative authority": "[a] legal writing taken as definitive or decisive; esp[ecially], a judicial . . . decision cited as precedent." [9]

McCoy's attorney did not claim or imply that our unpublished decision in *Westerlin* resolved the issue of statutory interpretation presented in McCoy's case or that it restricted the scope of Judge Brown's decision-making authority on this issue. Thus, the defense attorney did not violate Appellate Rule 214(d) by bringing *Westerlin* to Judge Brown's attention.

We now turn to the merits of McCoy's argument. McCoy concedes that Alaska Criminal Rule 32.1(b)(1) specifically requires presentence reports to include "any finding of delinquency." But McCoy contends that prior judicial approval is needed before a presentence investigator can refer to any other aspect of a defendant's juvenile history—*i.e.*, contacts that did not lead to a formal delinquency adjudication. To support this contention, McCoy relies on a statute, AS 47.12.300, and a court rule, Alaska Delinquency Rule 27(a)(1).

Alaska Statute 47.12.300(d) states that the superior court is required to seal "all the court's official records pertaining to [a] minor" within 30 days of the time the court relinquishes juvenile jurisdiction over the minor (normally, at the time of the minor's 18th birthday). The statute then declares that, once these official court records are sealed, "[no] person may . . . use these . . . records for any purpose except that the court may order their use for good cause shown or may order their use by an officer of the court in making a presentenc[e] report."

In fact, not only does section 300(d) seemingly prohibit the presentence investigator from "using" the juvenile records without a court order, but section 300(e) seemingly prevents the presentence investigator from even looking at these records. Section 300(e) declares that the records "may be inspected only with the court's permission and only by persons having a legitimate interest in them."

McCoy also relies on Alaska Delinquency Rule 27(a)(1), but this rule appears to authorize the practice McCoy is challenging. Delinquency Rule 27(a)(1) states in pertinent part:

> The court records of a juvenile delinquency proceeding are confidential. . . . Information [concerning those court records] may not be released and access to the records may not be permitted except as authorized by statute or upon court order for good cause shown, . . . except that . . . [a] probation officer employed by the [State of Alaska] may review delinquency proceedings records for the sole purpose of preparing a presentence report on the individual whose juvenile record is reviewed. The records may be used in the sentencing proceeding and attached to the probation officer's report.

Nevertheless, McCoy argues that this rule supports his position. He points out that the rule speaks of a probation officer's authority to review "delinquency proceedings records" when preparing a presentence report. McCoy contends that this phrase encompasses only "official court records" of the juvenile proceeding. By this, he means that Rule 27(a)(1) covers the *court's* records of the proceedings held in a juvenile case but not the material contained in the juvenile probation officer's file (unless that material hap-

---

**8.** BLACK'S LAW DICTIONARY 237 (7th ed.1999).

**9.** *Id.* at 128–29.

pens to be incorporated into a court pleading or order). To gain access to the material in the juvenile probation officer's file, McCoy argues, a presentence investigator must formally seek and obtain the superior court's permission.

The problem with McCoy's suggested interpretation of Rule 27(a)(1) is that it would leave the juvenile probation officer's file unprotected. As stated in the first sentence of Rule 27(a), the purpose of the rule is to establish the confidentiality of "[t]he court records of a juvenile delinquency proceeding"—a phrase which we construe to be equivalent to "delinquency proceedings records" (the shorter phrase used later in that same paragraph). If, as McCoy argues, these two phrases refer only to the papers in the superior court's file, then there would be no rule to protect the confidentiality of the juvenile probation officer's file.

Moreover, under McCoy's interpretation, AS 47.12.300 would not protect the contents of the juvenile probation officer's file, either. That statute requires the sealing of "all the court's official records pertaining to [a] minor." If, as McCoy suggests, "the court's official records" do not include the juvenile probation officer's file, then the statute likewise offers no protection to that file.

Because McCoy's interpretation leads to results that are inconsistent with the protective goals shared by the legislature and the supreme court, we reject his interpretation.[10] Instead, we construe the phrases used in Delinquency Rule 27(a)—"court records of a juvenile delinquency proceeding" and "delinquency proceedings records"—to include the contents of the juvenile probation officer's file. Similarly, we conclude that the phrase used in AS 47.12.300(d)—"the court's official records pertaining to [a] minor"—likewise encompasses the juvenile probation officer's file.

We must next address the differences between AS 47.12.300 and Delinquency Rule 27(a)(1). Under AS 47.12.300, a presentence investigator must secure special permission from the superior court before inspecting and using juvenile records. But under Delinquency Rule 27(a)(1), a presentence investigator is automatically entitled to inspect and use these records for the purpose of preparing an adult presentence report on that individual.

We resolve this conflict by noting that the difference is one of procedure. Both the statute and the rule allow a presentence investigator to review juvenile records. However, AS 47.12.300 requires the presentence investigator to obtain special permission from the superior court in each separate case, while Delinquency Rule 27(a)(1) allows the presentence investigator to review the records without obtaining prior case-specific approval from the superior court. In such instances, the procedure specified in the court rule takes precedence over any contrary procedure specified in the statute.[11]

We therefore hold that a presentence investigator in an adult criminal case may review and use the materials found in the defendant's juvenile court files (including the juvenile probation officer's files) without first obtaining case-specific permission from the superior court. Judge Brown acted correctly when he denied McCoy's motion to strike this information from McCoy's presentence report.

*Conclusion*

## OPINION DENYING REHEARING

Christopher McCoy asks us to reconsider our decision in his appeal, *McCoy v. State*, 59 P.3d 747 (2002).

McCoy's main contention on appeal was that pre-sentence investigators must obtain

10. See *Ellingstad v. State, Dep't. of Natural Resources*, 979 P.2d 1000, 1006 (Alaska 1999) (a court should not construe the language of a statute in such a way as to lead to a result that is "contrary to the purpose of the statute"); *Millman v. State*, 841 P.2d 190, 195 (Alaska App. 1992) ("a court is … obliged to avoid construing statutes in a way that leads to patently absurd results or to defeat of the obvious legislative purpose behind the statute").

11. See *Gieffels v. State*, 552 P.2d 661, 667–68 (Alaska 1976), *disapproved of on other grounds by Miller v. State*, 617 P.2d 516 (Alaska 1980); *Main v. State*, 668 P.2d 868, 872–73 (Alaska App.1983).

case-specific authorization from the superior court before they can examine a defendant's juvenile probation files and before they can refer to a defendant's criminal activities as a juvenile if those criminal activities were "adjusted" informally and did not lead to a formal adjudication of delinquency. To support this contention, McCoy relied on a court rule, Alaska Delinquency Rule 27(a)(1), and a statute, AS 47.12.300. In our decision, we rejected McCoy's interpretations of this court rule and this statute, and we held that pre-sentence investigators do not need to obtain case-specific court permission before they refer to a defendant's non-adjudicated acts of delinquency. *McCoy*, opinion at page 751.

McCoy now seeks rehearing. He asserts that we should reconsider our ruling because we failed to consider another statute, AS 122.47.310(a). This statute declares that "all information and social records pertaining to a minor who is [alleged to have committed delinquent acts] prepared by or in the possession of a federal, state, or municipal agency or employee ... are privileged and may not be disclosed directly or indirectly to anyone without a court order."

McCoy contends that even if Delinquency Rule 27(a) and AS 12.47.300 do not support his argument on appeal, his argument is nevertheless correct because this other statute—AS 12.47.310(a)—forbids a pre-sentence investigator from obtaining information relating to a defendant's acts of delinquency if those acts did not lead to a formal adjudication of delinquency.

McCoy did not cite AS 12.47.310(a) in either of his briefs to this Court. This omission would normally preclude McCoy from seeking rehearing on this point. As we said in *Booth v. State*, "[Appellate] Rule 506(a) was not intended to allow parties to raise new arguments after they have had a chance to analyze an appellate court's decision. Rule 506(a) implicitly limits rehearing to legal principles or propositions that were raised by the parties in the normal course of the appeal." [1]

McCoy points out that he did mention AS 12.47.310(a) in his trial court pleading, and that this pleading was included in his excerpt of record on appeal. But the fact that an argument may be mentioned in a defendant's trial court pleadings does not preserve the argument for appeal. A party's briefs must contain the factual and legal arguments that the party wishes the appellate court to consider. A party may not argue a point by incorporating trial court pleadings by reference.[2] Much less can a party "argue" a point by designating trial court pleadings for inclusion in the excerpt of record without even alerting the appellate court that the party intends to rely on the arguments presented in those trial court pleadings.

McCoy asserts that his failure to mention AS 47.12.310(a) in his briefs to this Court must have been due to "typographical error or oversight on the part of defense counsel". We reject McCoy's contention of "typographical error". And a petition for rehearing is not the proper vehicle for addressing McCoy's claim of attorney negligence.

Moreover, AS 47.12.310(a) does not provide a clear and straightforward answer to the legal contention raised in McCoy's appeal. Even though the statute declares that "all information and social records pertaining to a minor ... are privileged and may not be disclosed directly or indirectly to anyone without a court order", the statute also declares that this rule of privilege is subject to numerous exceptions—in particular, the exceptions specified in AS 47.12.310(b)–(g), AS 47.12.315, and AS 47.12.320.

Many of the exceptions listed in AS 47.12.310(b)–(g) appear to undercut McCoy's contention that a pre-sentence report can not refer to unadjudicated acts of delinquency. For example, AS 47.12.310(b)(1) states that a minor's records "shall" be disclosed to a federal, state, or municipal law enforcement agency when those records are pertinent to a specific investigation being conducted by that agency. Further, AS 47.12.310(b)(2)(E) states that a minor's records "shall" be dis-

---

**1.** 903 P.2d 1079, 1090 (Alaska App. 1995).

**2.** *See Anchorage Nissan, Inc. v. State*, 941 P.2d 1229, 1240 (Alaska 1997).

closed to "a law enforcement agency of this state or another jurisdiction as may be necessary for the protection, rehabilitation, or supervision of any minor or for actions by that agency to protect the public safety". Other provisions of AS 47.12.310 also conceivably allow disclosure to a pre-sentence investigator: see AS 47.12.310(c)(4) and AS 47.12.310(f).

Turning to AS 47.12.315, for all acts of delinquency committed on or after January 1, 1998[3], subsection (a)(1) of this statute specifically authorizes disclosure of all information relating to a minor's acts of delinquency (except the name of the victim) "when an agency takes action under AS 47.12.040(a)(1) to [informally] adjust a [delinquency] matter" and the matter involves a crime against a person punishable as a felony, or arson, burglary, sale of a controlled substance, or any other crime in which the minor employed a deadly weapon. Subsection (b) authorizes these same disclosures whenever the Department of Health and Social Services files a delinquency petition against a minor alleging one or more of these same crimes (apparently without regard to the ultimate disposition of that petition). Subsections (a)(2) and (b)(2) authorize these same disclosures whenever a delinquent act has been informally adjusted and the minor then fails to comply with the conditions of the adjustment.

Finally, turning to the third statute, AS 47.12.320, subsection (a)(2) states that the Department of Health and Social Services "may disclose confidential or privileged information about the minor and make available for inspection documents about the minor" to the Governor, the Lieutenant Governor, any legislator, the state Ombudsman, the Attorney General, the Commissioner of Health and Social Services, the Commissioner of Administration, the Commissioner of Public Safety, and any person working for them "for review or use in their official capacities".

We need not—and do not—definitely construe any of these statutory provisions. Our point is that, contrary to McCoy's argument in his petition for rehearing, AS 47.12.310(a) does not clearly and unambiguously state that a pre-sentence investigator is barred from examining or relying on Department of Health and Social Services records pertaining to a defendant's prior acts of delinquency when those acts were informally adjusted. In fact, when the four pertinent statutes—AS 47.12.300 through 320—are considered together, it appears that the law is the opposite of what McCoy claims it to be.

For these reasons, McCoy's petition for rehearing is **DENIED**.

The judgment of the superior court is AFFIRMED.

## OPINION ON REHEARING

MANNHEIMER, Judge.

The State asks us to reconsider one aspect of our decision in this case: our construction of Appellate Rule 214, which declares that unpublished decisions "may not be cited in the courts of this state".

In our original opinion, *State v. McCoy*, 59 P.3d 747 (2002), we concluded that Appellate Rule 214 forbids an attorney from arguing that an unpublished decision is "precedent" in the sense that it controls or restricts future judicial decision-making, but we also concluded that Rule 214 does not forbid an attorney from bringing an unpublished decision to a court's attention for whatever persuasive value it might have.[1] The State contends that we misconstrued Appellate Rule 214—that when the rule declares that unpublished decisions "may not be cited", it means that attorneys and judges are strictly forbidden from mentioning unpublished decisions when they argue and decide matters in the courts of Alaska.

*The basis of the State's request for rehearing*

The State bases its argument primarily on two sources: (1) a memorandum written to the Alaska Supreme Court by a former Clerk

---

**3.** *See* AS 47.12.315(e).

**1.** *See McCoy*, at 749–50.

of the Appellate Courts, Robert D. Bacon, and (2) a memorandum prepared by the court's staff attorney, Andrew M. Hemenway, analyzing the state of the law with respect to unpublished decisions. Both Mr. Bacon's memorandum and Mr. Hemenway's memorandum were written in October 1980, when the supreme court was revising the Alaska Rules of Appellate Procedure and was considering the merits of proposed Appellate Rule 214.

From the content of Mr. Bacon's memorandum, and from the existence of Mr. Hemenway's memorandum, it appears that the supreme court had questions about the practice of issuing unpublished opinions, even though unpublished decisions were allowed under the then-existing rule (former Appellate Rule 26). In his memorandum, Mr. Bacon assured the supreme court that proposed Appellate Rule 214 embodied "the national mainstream" answer to the question of "whether ... unpublished decisions may be cited". Mr. Bacon also sought to assure the supreme court that limiting the citation of unpublished decisions was good policy.

Mr. Bacon argued that a "no citation" rule would benefit the legal community because, if attorneys were allowed to cite unpublished opinions, this practice would favor "the specialist over the generalist, the large law firm over the small, the government agency over those challenging its action, and ... insurance carrier[s] over those seeking to recover from [them]". In other words, Mr. Bacon argued that it would be unfair to allow lawyers to cite unpublished decisions. Mr. Bacon's argument was premised on the assumption that only a relatively few litigators—institutional litigants, large law firms, and others who regularly litigated cases in the appellate courts—would know the contents of the courts' unpublished decisions.

Mr. Bacon also argued that if litigants were allowed to cite unpublished decisions, this would saddle the Appellate Court Clerk's Office with "the added burden of serving as a library and repository of ... unpublished decisions". That is, he assumed that no one

(or only a few litigants) would have ready access to the text of unpublished opinions, thus forcing the Clerk's Office to assume the role of a reference source for all the litigants who wanted to obtain copies of unpublished opinions or who wished to search through the court's unpublished opinions in the hope of finding some pertinent material.

All of these assumptions proved to be wrong. As was pointed out in *John v. State,* 35 P.3d 53 (Alaska App.2001), "copies of [Court of Appeals] memorandum decisions have always [been distributed] to essentially every judge and lawyer who regularly practices criminal law in this state".[2] Moreover, "our memorandum decisions are now readily available on the Internet", allowing any lawyer or other interested person to search these opinions and download them.[3]

Thus, our unpublished decisions have not become an arcane body of law known to only a select few, nor has the Appellate Court Clerk's Office become the depository of semi-secret decisions. Rather, our unpublished decisions are distributed to almost all criminal practitioners within days after the decisions are issued, and these decisions are readily accessible to everyone else.

Another of Mr. Bacon's predictions also proved to be wrong—this time, with more unfortunate consequences. In his memorandum, Mr. Bacon argued that Alaska need not worry about one potential danger of restricting the citation of unpublished opinions: "the possibility of different panels of the same appellate court rendering inconsistent decisions because the later panel is not aware of the previous unpublished decision". Mr. Bacon assumed that Alaska's appellate courts would always be aware of their own prior unpublished decisions because both courts always sit *en banc.*

This assumption may be true in the short run, but it is not true over the long term. In *John v. State,* this Court was required to address (and reverse) a twelve-year-old unpublished opinion that we ourselves had forgotten about. *John* illustrated the pitfall of issuing unpublished decisions: the problem

---

**2.** *John,* 35 P.3d at 64 (Mannheimer, J., concurring).

**3.** *Id.*

that, "given enough time and enough change of personnel, the court 'forgets' that we issued those decisions." [4]

Thus, all of Mr. Bacon's arguments in favor of restricting the citation of unpublished opinions have proved to be based on incorrect assumptions. This fact, however, does not directly answer the State's present contention that Appellate Rule 214 was intended to prohibit attorneys and judges from mentioning unpublished opinions. Even though Mr. Bacon's arguments have proved wrong, the supreme court may have been persuaded by those arguments in 1980.

The real question is to identify what Mr. Bacon meant when he told the supreme court that proposed Appellate Rule 214 embodied the "mainstream" position with respect to the citation of unpublished opinions—or, more precisely, to identify what the supreme court thought when they promulgated the rule.

*The state of the law with regard to unpublished opinions*

The legal research that Mr. Bacon was relying on—*i.e.,* the research contained in Mr. Hemenway's memorandum—indicated that "[m]ost of the courts which do not publish all [of] their reasoned opinions forbid citing [the unpublished opinions] except for such purposes as collateral estoppel, res judicata, or law of the case". In Mr. Hemenway's memorandum, this sentence is immediately followed by a footnote—a footnote that directs the reader's attention to law review articles which conclude that a strict interpretation of this rule had "caused problems" and had "prevented [discussion] of many useful cases". Returning to the main text of the memorandum, Mr. Hemenway then noted that the American Bar Association had recommended that litigants be allowed to cite unpublished decisions so long as copies of the pertinent decisions were provided to all parties—and that several jurisdictions had adopted the ABA's recommendation.

From all of this, it is not clear what "mainstream" position Mr. Bacon was advocating when he asked the supreme court to adopt Appellate Rule 214. Our own research reveals that many courts with "no-citation" rules similar to the one described in Mr. Hemenway's memorandum—rules that forbid citation of unpublished decisions "except for such purposes as collateral estoppel, res judicata, or law of the case"—nevertheless allow attorneys to refer to unpublished decisions for whatever persuasive power they might have, even though unpublished decisions are not "precedent" in the sense that they control or restrict future judicial decision-making.

For example, even though Virginia law declares that unpublished opinions "are not to be cited or relied upon as precedent except for the purpose of establishing res judicata, estoppel or the law of the case", the Virginia Court of Appeals recently held that "a court . . . does not err by considering the rationale [of an unpublished opinion] and adopting it to the extent it is persuasive." [5]

Similarly, Minnesota Statute 480A.08, subdivision 3(c), declares that "[u]npublished opinions of the court of appeals are not precedential". Nevertheless, the Minnesota courts have interpreted this statute as allowing attorneys to rely on unpublished decisions for their persuasive value.[6]

New Mexico takes the same approach to its "no citation" rule.[7] So does Tennessee.[8]

4. *Id.* at 65.

5. *Fairfax County School Board v. Rose,* 29 Va. App. 32, 509 S.E.2d 525, 528 n. 3 (Va.App.1999) (*en banc* ).

6. *See Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800 (Minn.App.1993); *State v. Rosillo,* unpublished, 2001 WL 881279, *2 (Minn.App., July 31, 2001).

7. *See State v. Gonzales,* 110 N.M. 218, 794 P.2d 361, 370–71 (N.M.App.1990). The rule in question, New Mexico Appellate Rule 12–405(C),

states: "An order, decision or memorandum opinion, because it is unreported and not uniformly available to all parties, shall not be published nor shall it be cited as precedent in any court."

8. *See State v. Tansil,* 72 S.W.3d 665, 667 (Tenn. Crim.App.2001); *Brown v. Knox County,* 39 S.W.3d 585, 589 (Tenn.App.2000); *State v. Kelley,* unpublished, 2002 WL 927610, *24 (Tenn. Crim.App., May 7, 2002). *But see Hickman v. Tennessee Board of Paroles,* 78 S.W.3d 285, 290 (Tenn.App.2001) (declining to rely on unpublished decisions as authority, even though the

And so does Texas.[9]

We have also found several instances in which other courts have allowed parties to cite unpublished decisions, or have assessed the reasoning or applicability of unpublished decisions, without expressly saying that unpublished decisions can be considered for their persuasive value. *See McBride v. Jones*, 803 So.2d 1168, 1171 (Miss.2002) (McRae, J., dissenting); *Whitt v. State*, 827 So.2d 869, 877, n. 2 (Ala.Crim.App.), (in which the court expressly stated that it was relying on the analysis contained in an earlier unpublished opinion); *Hammond v. State*, 260 Ga. 591, 398 S.E.2d 168, 174 (Ga.1990); *State v. Gonzales*, 63 S.W.3d 317, 319 (Mo. App.2001).

Two states, Ohio and Utah, have reached the conclusion that all decisions, published and unpublished, are equally valid as precedent. Ohio achieved this result by amending its court rules.

Until earlier this year, Rule 2(G) of the Ohio Supreme Court Rules for the Reporting of Opinions declared that unpublished deci-

sions of Ohio's courts of appeals were not controlling authority (except for purposes of collateral estoppel, res judicata, or law of the case), but could be cited as persuasive—*i.e.*, non-binding—authority. But in May 2002, Rule 2(G) was superseded by a revised Rule 4. Section (A) of this rule declares, "Notwithstanding the prior versions of these rules, designations of, and distinctions between, 'controlling' and 'persuasive' opinions of the courts of appeals based merely upon whether they have been published ... are abolished." Section (B) adds, "All court of appeals opinions issued after the effective date of these rules [*i.e.*, after May 1, 2002] may be cited as legal authority and weighted [*sic* ] as deemed appropriate by the courts."

(In recognition of computer technology, Ohio Rule 3(B) requires that all court of appeals opinions (whether "published" or not) "be posted to the Supreme Court web site".)

The Utah Supreme Court achieved this same result by striking down a "no citation" rule promulgated by the Utah Judicial Council.[10]

---

court declared that "[the] reasoning [of these decisions] is sound").

**9.** *See Hernandez v. State*, 55 S.W.3d 701, 705 (Tex.App.2001); *Davenport v. Verner & Brumley, P.C.*, unpublished, 2001 WL 969249, *2 (Tex. App., Aug.8, 2001) (both discussing and considering unpublished opinions for their persuasive value). *But see State Farm Lloyds v. Borum*, 53 S.W.3d 877, 889 n. 7 (Tex.App.2001) (A litigant brought an unpublished decision to the attention of the court because it was apparently the sole statement by a Texas court on the pertinent question of law. The court declared, "Unpublished opinions have no precedential value and must not be cited as authority by counsel[;] we are [therefore] constrained by the appellate rules from considering [this unpublished decision] as authority.").

(Texas Appellate Rule 47.7 states: "Opinions not designated for publication by the court of appeals have no precedential value and must not be cited as authority by counsel or by a court.")

**10.** See *Grand County v. Rogers*, 44 P.3d 734, 738 (Utah 2002):

[I]t is appropriately within the discretion of the court of appeals to determine which matters require oral argument, which decisions require a full opinion, and which do not. It is not, however, within their authority, or the authority of the Judicial Council, to decide which of their decisions may be cited as prece-

dent. The work of judges, the ... decisions and opinions issued to the parties, bar, and public, is the very fabric of the common law. When judges speak on issues of law, that expression becomes part of the law until it is authoritatively revised. When the court of appeals renders a decision on an issue, that decision is automatically part of the law of this state, unless and until contravened by this court, the legislature, or the people through the processes authorized for the making of new law. For this reason, decisions of the court of appeals expressed in a memorandum decision, or in an opinion, are equally binding upon lower courts of this state, and may be cited to the degree that they are useful, authoritatively and persuasively. Such decisions are issued and distributed as are all other opinions, except for the fact that they are not published in the Utah Advance Reports or the West reporter system. They are generally available to the bar and public through the internet service provided by the Administrative Office of the Courts, and although not "officially published," may be presented as precedential authority to a lower court or as persuasive authority to this court, so long as all parties and the court are supplied with accurate copies at the time the decision is first cited.

Obviously, if memorandum decisions are limited only to those circumstances in which the legal reasoning and the application of that reasoning to a case add nothing to the body of

In addition, several states have enacted rules that explicitly allow parties and judges to discuss and rely on unpublished decisions, not as controlling precedent but rather for their persuasive value.

For example, Iowa Appellate Rule 6.14(5)(b) states that unpublished appellate decisions "may be cited in a brief", but they "shall not constitute controlling legal authority". The rule requires parties to attach "a copy of the unpublished opinion ... to [their] brief[,] accompanied by a certification that counsel has conducted a diligent search for, and fully disclosed, any subsequent disposition of the unpublished opinion". And, in recognition of the role that on-line legal databases play in the modern practice of law, the rule requires the party to "include, when available, an electronic citation indicating where the opinion may be readily accessed on line".

Oklahoma Criminal Appeal Rule 3.5(C)(3) is similar: "[A]n unpublished opinion is not binding on this Court. However, parties may cite and bring to the Court's attention the unpublished opinions of this Court provided counsel states that no published case would serve as well the purpose of which counsel cites it, and provided further that counsel shall provide opposing counsel and the Court with a copy of the unpublished opinion."

In the same vein, Michigan Rule of Court 7.215(C)(1) states that an unpublished opinion "is not precedentially binding under the rule of *stare decisis*". The rule then allows parties to cite unpublished opinions for their persuasive value, but requires the party to "provide a copy of the [unpublished] opinion to the court and to opposing parties with the brief or other paper in which the citation appears."

And even in those states that forbid the parties from mentioning unpublished opinions, judges read unpublished opinions and pay attention to them. See *Wortel v. Somerset Industries, Inc.*, 331 Ill.App.3d 895, 264 Ill.Dec. 515, 770 N.E.2d 1211, 1220 n. 5 (Ill. App.2002), in which the court admitted that it reviews unpublished opinions when it researches a case. See also *State v. Locklear*, 105 Wash.App. 555, 20 P.3d 993, 997 n. 11 (Wash.App.2001), in which the court acknowledged that unpublished opinions are not to be cited as precedent, but then assured its readers that the court was "not aware of any unpublished opinion that is [in]consistent" with the analysis the court adopted.

Three other decisions of the Washington Court of Appeals provide a striking illustration of this judicial ambivalence. Washington Appellate Rule 10.4(h) states that "[a] party may not cite as an authority an unpublished opinion of the Court of Appeals." In *Mann v. Hobbick*, 112 Wash.App. 1032, 2002 WL 1402546 (Wash.App., July 1, 2002), the court imposed monetary sanctions on an attorney for citing an unpublished opinion. In *In re Marriage of Gilbert*, 88 Wash.App. 362, 945 P.2d 238, 240–41 (Wash.App.1997), the court of appeals stated that even though it found the reasoning of an unpublished opinion "highly persuasive", it could not rely on that unpublished opinion—so, instead, the court called for supplemental briefing on the issue of whether it should adopt the analysis of the unpublished opinion. And in *Starypan v. Metropolitan Park Dist. of Tacoma*, unpublished, 105 Wash.App. 1025, 2001 WL 285827 (Wash.App., Mar. 23, 2001), when one party asked the court to strike references in the other party's brief to unpublished decisions issued by other jurisdictions, the court refused. The court ultimately declared that it had decided not to rely on the unpublished decisions, but only because the court "[did] not find [them] persuasive".[11]

We note that the Hawai'i chapter of the American Judicature Society recently submitted a report to the Hawai'i Supreme Court recommending that Hawai'i Appellate Rule 35 be amended to allow parties to rely on unpublished opinions for their persuasive value. The Judicature Society explained,

---

the law, citation of a memorandum decision will be unnecessary. Existing primary case law is adequate and more appropriate because of its more complete reasoning. But, in those rare instances when some new legal rule is inadvertently announced by way of a memorandum decision, authorizing citation to that decision will assure consistency in the law.

11. *Starypan*, 2001 WL 285827 at *2 n. 3.

"There is a problem perceived by the legal community with the continued use of summary disposition orders and, particularly, the inability to cite memorandum opinions despite the fact that these opinions appear to be of substantial length and content and often cite other case law as precedent for the conclusions."[12]

We also note that many courts allow litigants to rely on the unpublished decisions of *other* jurisdictions for whatever persuasive power those decisions might possess. *See Byrd v. Bentley,* —— So.2d ——, 2002 WL 1941686, *7 (Ala., Aug.23, 2002); *Waskel v. Guaranty National Corp.,* 23 P.3d 1214, 1220 (Colo.App.2000); *Staff of Idaho Real Estate Comm'n v. Nordling,* 135 Idaho 630, 22 P.3d 105, 109 (Idaho 2001); *State v. Gibbs,* 769 N.E.2d 594, 598 n. 4 (Ind.App.2002); *Campbell v. Markel American Insurance Co.,* 822 So.2d 617, 625 n. 4 (La.App.2001); *Palacios v. Louisiana and Delta R.R., Inc.,* 775 So.2d 698, 702 (La.App.2000); *State ex rel. Gendrich v. Litscher,* 246 Wis.2d 814, 632 N.W.2d 878, 882 n. 6 (Wis.App.2001); *State v. Allen,* 208 W.Va. 144, 539 S.E.2d 87, 103 (W.Va. 1999).

Turning to the federal system, half of the federal circuits have rules that explicitly allow parties and judges to rely on unpublished decisions for their persuasive value. The Sixth Circuit's Rule 28(g) is typical of these provisions:

(g) *Citation of Unpublished Decisions.* Citation of unpublished decisions in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case. If a party believes, nevertheless, that an unpublished disposition has precedential value in relation to a material issue in a case, and that there is no published opinion that would serve as well, such decision may be cited if that party serves a copy thereof on all other parties in the case and on this Court. Such service shall

be accomplished by including a copy of the decision in an addendum to the brief.

The Fourth Circuit's Rule 36(c), the Eighth Circuit's Rule 28A(i), the Tenth Circuit's Rule 36.3, and the Eleventh Circuit's Rule 36–2 contain similar language.

The Fifth Circuit's Rule 47.5 distinguishes between unpublished opinions issued before January 1, 1996 and those issued on or after that date. Subsection 3 of Rule 47.5 states that unpublished opinions issued before 1996 have the force of binding precedent—although they "normally [should] be cited only when the doctrine of res judicata, collateral estoppel or law of the case is applicable". Subsection 4 then declares that unpublished decisions issued on or after January 1, 1996 are not binding precedent—but parties and judges may freely rely on them for their persuasive value.[13]

And, in a striking departure from its past practice, the District of Columbia Circuit recently decided to give equal precedential weight to published and unpublished decisions alike. The D.C. Circuit's Rule 28(c)(1)(A) states that unpublished decisions issued before 2002 are governed by the Circuit's old rule—*i.e.,* they are not to be cited except for purposes of establishing res judicata, collateral estoppel, or law of the case. But the next subsection, Circuit Rule 28(c)(1)(B), declares that all of the Circuit's unpublished decisions issued on or after January 1, 2002 may be cited as precedent without limitation.

Even in the remaining federal circuits— the ones that do not allow citation of unpublished decisions for persuasive value—it is obvious that the judges are aware of, and read, unpublished opinions. For instance, in *Acequia, Inc. v. Prudential Ins. Co. of America,* the Seventh Circuit discussed an unpublished opinion of the Ninth Circuit (a circuit that does not allow citation of unpublished opinions), but concluded that the unpublished

---

**12.** *Flores v. Barretto,* 99 Hawai'i 270, 54 P.3d 441, 447 n. 1 (Haw.2002) (Acoba, J., concurring) (quoting American Judicature Society, Hawai'i chapter, *Report of the AJS Committee Reviewing Unpublished Opinions* (June 14, 2002), at p. 4).

**13.** *United States v. Rodriguez–Montelongo,* 263 F.3d 429, 433 n. 3 (5th Cir.2001); *Anderson v. Red River Waterway Comm'n,* 231 F.3d 211, 213 n. 1 (5th Cir.2000).

opinion was unpersuasive.[14] The First Circuit engaged in similar analysis of an unpublished decision from the Ninth Circuit in *United States v. Mojica–Baez.*[15] In *Sandvik AB v. Advent International Corp.*, the Third Circuit considered an unpublished decision of the Fourth Circuit.[16] And in *Patton v. Cox,* the Ninth Circuit considered an unpublished decision of the Third Circuit.[17]

Moreover, when an unpublished decision comes from a circuit that allows citation of its unpublished decisions for their persuasive value, the "no citation" circuits do not hesitate to examine the unpublished decisions of their sibling circuits.[18]

It also appears that the "no citation" circuits are becoming sensitive to the criticism that their rules potentially allow panels to issue inconsistent or even irreconcilable decisions. The Ninth Circuit amended its "no citation" rule to allow parties to cite unpublished decisions to support a request for publication or to support a petition for rehearing (either by the panel or *en banc*) if the unpublished decision demonstrates the existence of conflicting decisions within the circuit.[19] And even though the First Circuit has no analogous rule, a panel of the First Circuit recently went out of its way to assure readers that its decision was fully consistent with prior unpublished decisions from that circuit.[20]

### *Our construction of Alaska Appellate Rule 214*

Many of the authorities we have just discussed are tangential to the issue confronting us in the present case. Our task is not to frame the best possible rule regarding unpublished opinions. Rather, our task is to construe the rule that we have—Alaska Appellate Rule 214. We must determine what the Alaska Supreme Court intended to accomplish when it promulgated Appellate Rule 214.

Current judicial treatment of unpublished opinions may not provide a firm answer to this question. But this Court's own Standing Order Number 3 provides a contemporaneous indicator of how Rule 214 was viewed when it was initially promulgated.

This Court adopted its Standing Orders in March 1981, shortly after the supreme court promulgated Appellate Rule 214 (and the rest of the revised Rules of Appellate Procedure). Standing Order Number 3 sets forth the "Guidelines for Publication of Court of Appeals Decisions".

Paragraph 6 of those Publication Guidelines specifies that every unpublished decision of this Court is to be distributed to all the judges of Alaska. Paragraph 6 further specifies that unpublished decisions are to be made available upon request to all members of the public. This clause quickly led to the routine distribution of all of our unpublished decisions to the Department of Law, the Public Defender Agency, and other lawyers who submitted a standing request to receive them.

In other words, within months of the supreme court's enactment of Appellate Rule 214, this Court issued a standing order that mandated distribution of all our unpublished decisions to every Alaska judge and to every other person who wanted a copy. The purpose of Standing Order Number 3 was to make sure that all the judges of this state and all other interested attorneys and litigants were apprised of every one of our unpublished decisions.

This purpose is inconsistent with the State's current suggested interpretation of

---

**14.** 226 F.3d 798, 805 (7th Cir.2000).

**15.** 229 F.3d 292, 308 (1st Cir.2000).

**16.** 220 F.3d 99, 103–04 (3rd Cir.2000).

**17.** 276 F.3d 493, 498–99 (9th Cir.2002).

**18.** *See McClendon v. City of Columbia*, 305 F.3d 314, 337 n. 9 (5th Cir.2002) (*en banc*) (Parker, J., dissenting); *Acosta v. Artuz*, 221 F.3d 117, 123

(2nd Cir.2000); *United States v. Leon*, 203 F.3d 162, 164 n. 3 (2nd Cir.2000); *Barmes v. United States*, 199 F.3d 386, 389 n. 1 (7th Cir.2000); *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 831 n. 1 (9th Cir.1999).

**19.** Ninth Circuit Rule 36–3(b)(iii).

**20.** *See Utica Mutual Insurance Co. v. Weathermark Investments, Inc.*, 292 F.3d 77, 84 n. 4 (1st Cir.2002).

Appellate Rule 214. For if Appellate Rule 214 was intended to guarantee that unpublished decisions were never referred to again (aside from establishing collateral estoppel, res judicata, or law of the case), why would this Court require distribution of all its unpublished decisions to every judge in Alaska and to every attorney or litigant who expressed an interest? It makes no sense to require all judges and all interested attorneys to receive copies of our unpublished decisions unless we believed that this information might benefit them—by providing them with a growing library of written decisions that would give them insight into how this Court was applying the law.[21]

Standing Order Number 3—in particular, Paragraph 6's mandate of a wide and unrestricted distribution of this Court's unpublished decisions—is fundamentally at odds with the State's suggestion that unpublished decisions are to be read only by the trial judge and the parties, then never mentioned again. Rather, our Standing Order Number 3 strongly suggests that unpublished opinions were intended to be discussed by judges and attorneys for whatever persuasive power they might have.

As explained above, Standing Order Number 3 was issued in March 1981, shortly after the supreme court promulgated Appellate Rule 214. There has never been any suggestion that our Standing Order is inconsistent with Appellate Rule 214.

Based on this history, we align ourselves with Minnesota, New Mexico, Tennessee, Texas, and Virginia—states that have interpreted their "no citation" rules to mean only that unpublished opinions are not precedent for purposes of *stare decisis*. We reaffirm our holding that, although Appellate Rule 214 forbids citation of unpublished decisions as precedent (*i.e.*, as decisions that control or restrict future judicial decision-making), the rule does not forbid judges and lawyers from relying on unpublished decisions for whatever persuasive power those decisions might have.

---

**21.** *See John v. State,* 35 P.3d at 64–65 (Mannheimer, J., concurring).